IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FCSTONE MERCHANT SERVICES, LLC | § § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. 4:20-cv-03693 |
| SGR ENERGY, INC. and ST SHIPPING & TRANSPORT PTE LTD. | § § § § § § | |
| *Defendants*. | § | |

## DEFENDANT SGR ENERGY'S ANSWER AND COUNTERCLAIM

Defendant SGR Energy, Inc. ("SGR") files this Answer to Plaintiff's Complaint (ECF No. 1) and Counterclaim and would show this Court as follows.

# SGR'S ANSWER

## I. INTRODUCTION

1. SGR admits that a suit has been filed and denies the remaining allegations contained in this paragraph.

## II. PARTIES

2. SGR admits the allegations contained in this paragraph.

3. SGR admits the allegations contained in this paragraph.

4. SGR admits the allegations contained in this paragraph.

### III. JURISDICTION AND VENUE

5. SGR admits the allegations contained in this paragraph.

6. SGR admits the allegations contained in this paragraph.

### IV. FACTUAL BACKGROUND

**A. The Parties**

7. SGR admits the allegations contained in this paragraph.

8. SGR admits the allegations contained in this paragraph.

9. SGR admits the allegations contained in this paragraph.

**B. The Agreement**

10. SGR admits that it entered into a Master Purchase and Sale Agreement ("MPSA"). The agreement speaks for itself.

11. SGR admits that certain transactions with Plaintiff are subject to the MPSA. No further response is necessary to the allegations contained in this paragraph, as the MPSA speaks for itself.

12. No response necessary as Section 2.4 of the MPSA speaks for itself. The remaining allegations are legal conclusions interpreting Section 2.4 of the MPSA and no response is necessary.

13. SGR admits that the allegations in this paragraph describe a manner in which the commodities may be purchased from Plaintiff. No response necessary to the extent the allegations purport to be interpretations of the MPSA as it speaks for itself. The remaining allegations are denied.

14. SGR denies the allegations in this paragraph. The MPSA speaks for itself, but Section 2.1(a) concerns sales by SGR to Plaintiff for which Plaintiff must pay SGR.

15. SGR denies the allegations in this paragraph. The MPSA speaks for itself, but Section 2.1(c) concerns sales by SGR to Plaintiff for which Plaintiff must pay SGR. Pleading further, the Sales Contracts attached as Exhibits B, C and D speak for themselves and do not apply to Section 2.1(c) of the MPSA.

16. SGR denies the allegations that the Confirmations refer to any voyages to transport domestic crude oil. SGR admits that it transported domestic crude oil to Barranquilla, Colombia as described.

### C. The First Voyage

17. SGR admits the allegations in this paragraph.

18. SGR admits that domestic crude oil was loaded as per the Bill of Lading which speaks for itself.

19. SGR admits the allegations in this paragraph.

20. SGR admits that it received the emails as alleged in this paragraph.

21. SGR admits the allegations in this paragraph.

22. SGR admits the allegations in this paragraph.

23. SGR admits the allegations in this paragraph.

24. SGR admits the allegations in this paragraph.

25. SGR admits the allegations in this paragraph.

### D. The Second Voyage

26. SGR admits that domestic crude oil was loaded as per the Bill of Lading which speaks for itself.

27. SGR admits the allegations in this paragraph.

### E. The Vessel

28. SGR admits the allegations in this paragraph.

29. SGR admits that it incurred a certain amount of demurrage charges but denies the remaining allegations in this paragraph.

30. SGR admits it received the invoice attached as Exhibits J and K. SGR denies the remaining allegations in this paragraph.

31. SGR admits the allegations of this paragraph.

32. SGR admits that to discharge the Commodity from the Vessel will require payment of all demurrage fees and the Charter costs. SGR denies the remaining allegations of this paragraph.

33. No response is necessary, the MPSA speaks for itself.

**F. SGR's Nonpayment under the Agreement**

34. SGR admits the allegations of this paragraph.

35. SGR admits the allegations of this paragraph.

36. SGR admits the emails attached as Exhibit L were sent to Plaintiff.

37. SGR admits the emails attached as Exhibit M were sent to Plaintiff.

38. SGR admits the emails attached as Exhibit N were sent to Plaintiff.

39. SGR admits that Plaintiff has quoted from the emails attached as Exhibits to this Complaint.

40. SGR denies the allegations of this paragraph.

**G. Default**

41. SGR admits it failed to pay the sums alleged in this paragraph at the dates shown. SGR has stated to Plaintiff that it intends to make such payments.

42. SGR admits it received the notice attached as Exhibit P

43. SGR admits it received the notice attaches as Exhibit Q. SGR denies that Plaintiff has accurately quoted from Article 7 of the MPSA.

### H. The Commodity and Risk of Diminution

44. SGR denies that the statements in this paragraph are accurate. Crude oil is stored on tankers and in onshore vessels for many months without issue.

45. SGR admits the allegations of this paragraph.

46. SGR admits the allegations of this paragraph.

47. SGR denies the allegations of this paragraph.

48. SGR denies the allegations of this paragraph.

49. SGR denies the allegations of this paragraph.

50. SGR admits that the market for crude oil is subject to volatility. SGR denies the remaining allegations of this paragraph.

51. SGR denies the allegations of this paragraph.

### I. Loss Mitigation Provisions under the Agreement

52. SGR admits that Plaintiff has accurately quoted from Section 7.10 of the MPSA.

53. The MPSA speaks for itself and no response is necessary.

54. SGR denies the allegations of this paragraph.

55. SGR denies the allegations of this paragraph.

### J. SGR's Financial Condition

56. SGR denies the allegations of this paragraph.

57. SGR denies the allegations of this paragraph.

58. SGR denies the allegations of this paragraph.

59. SGR denies the allegations of this paragraph.

60. SGR denies the allegations of this paragraph.

## V. CAUSES OF ACTION

### A. Count One: Breach of Contract by SGR

61. SGR incorporates its responses set forth above.

62. SGR admits the allegations of this paragraph.

63. SGR denies the allegations of this paragraph.

64. SGR denies the allegations of this paragraph.

### B. Count Two: Attorneys' Fees as to SGR

65. SGR incorporates its responses set forth above.

66. SGR denies the allegations of this paragraph.

67. The MPSA speaks for itself and no response is necessary.

## VI. CONDITIONS PRECEDENT

68. SGR denies the allegations of this paragraph.

## VII. APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND REQUEST FOR INJUNCTIVE RELIEF

69. SGR incorporates its responses set forth above.

70. SGR denies the allegations of this paragraph.

71. SGR denies the allegations of this paragraph.

72. SGR denies the allegations of this paragraph.

73. The statements are legal conclusions and no response is required.

74. SGR denies the allegations of this paragraph.

75. SGR denies the allegations of this paragraph.

76. SGR denies the allegations of this paragraph.

77. SGR denies the allegations of this paragraph.

78. SGR denies the allegations of this paragraph.

79. SGR denies the allegations of this paragraph.

80. SGR denies the allegations of this paragraph.

81. SGR denies the allegations of this paragraph.

82. SGR denies the allegations of this paragraph.

83. SGR denies the allegations of this paragraph.

84. SGR denies the allegations of this paragraph.

85. SGR denies the allegations of this paragraph.

86. SGR denies the allegations of this paragraph.

## VIII. AFFIRMATIVE DEFENSES

87. Regarding all claims for a temporary restraining order and a preliminary injunction, SGR would show that Plaintiff has title to all of the crude oil that is the cargo on the "Second Voyage" as described in the Complaint and as described in the Bill of Lading attached as Exhibit H. It is totally within Plaintiff's power to take any action needed to unload that crude to storage tanks in Barranquilla, Colombia or to otherwise sell the crude oil. In fact, as Plaintiff well knows, SGR has access to storage tanks at that location and has offered to unload the crude oil to those tanks several times this summer and fall and has offered a sublease of its tanks to accommodate Plaintiff. Plaintiff refused. Thus, any claim for potential harm to the crude oil that is currently on board the Miss Claudia at the docks in Barranquilla is the result of actions and omissions by Plaintiff and totally within its control. Plaintiff's claim of alleged "irreparable harm" necessitating a temporary restraining order and preliminary injunction is without basis given its own control of its actions.

88. As stated above, SGR sought to unload the crude oil from the Miss Claudia. The first date that the Miss Claudia could have been unloaded into SGR's tanks in Colombia was on or about September 29, 2020. But Plaintiff refused to allow the crude oil to be unloaded.

89. Pursuant to the MPSA, if Plaintiff gives a notice of an Early Termination Date of the agreement, Plaintiff is obligated to liquidate any Terminated Transaction at Market Value. Plaintiff designated October 19, 2020 as an Early Termination Date and terminated all pending transactions. However, after that date, Plaintiff chose to keep the crude oil loaded in the cargo holds of the Miss Claudia at the docks in Barranquilla, Colombia. Further, as noted above, the crude oil could have been unloaded in September 2020, but Plaintiff refused to allow it. As a result, the demurrage charges continued for the ship after September 29, 2020 and have continued up to the present day. To the extent that Plaintiff has compensable damages, it has failed to mitigate those damages as required by the MPSA and applicable law. SGR is entitled to an offset for any and all demurrage charges and any other charges related to the charter of the Miss Claudia that were incurred or increased as a result of Plaintiff's refusal which resulted in the crude oil remaining on the ship on or after September 29, 2020.

90. SGR is entitled to an offset for all damages related to its counterclaim.

## IX. COUNTERCLAIM

### A. Parties

91. Counter-Plaintiff SGR, Inc. is a Texas corporation with its principal place of business in Houston, Texas.

92. Counter-Defendant, FCStone Merchant Services, LLC ("FCStone") is a limited liability company organized under the laws of Delaware with its principal place of business in Kansas City, Missouri which has already appeared in this litigation.

### B. Jurisdiction and Venue

93. This Court has jurisdiction over this counterclaim as there is complete diversity pursuant to 28 U.S.C. § 1332 and the amount in controversy exceeds $75,000.00.

94. Venue is proper under 28 U.S.C. § 1391(b) as the lawsuit is founded on a written contract expressly providing for venue in this District.

C. **Factual Background**

95. As detailed in the Complaint [Doc. 1], SGR is in the fuel blending, sales, distribution and trading business. SGR has been operating since its formation in 2011.

96. In early 2019 SGR became introduced to FCStone, a company in the commodity trading and commodity finance business. FCStone provides inventory repurchase agreements and transactional commodity financing agreements among its lines of business. SGR was looking for new sources of finance for its business and FCStone offered to provide those services.

97. The principal of SGR, Tommy San Miguel, was introduced to Rob Shenk, a Vice President of FCStone and they began discussions that led to the execution of the Master Purchase and Sale Agreement ("MPSA") between SGR and FCStone.

   a. **The Mutual Confidentiality Agreement between SGR and FCStone.**

98. Early on in the process of negotiating arrangements that lead to the execution of the MPSA, the parties first entered into a Mutual Confidentiality Agreement (the "MCA") so that the parties could exchange confidential and proprietary information in connection with their arrangements that led up to the MPSA. The Mutual Confidentiality Agreement was on a form provided by FCStone. A true and correct copy of that agreement is attached hereto as Exhibit "A" and incorporated herein.

99. The MCA includes an extensive description of what the parties agreed would be designated as "Confidential Information." Ex. A at Section 1. Included in the data from SGR that FCStone was required to protect as Confidential Information was any competitively sensitive material, "including, but not limited to … finance, operations, customer relationships, … business

plans, and internal performance results relating to past, present, or future business activities of the Parties …" *Id.*

100. As a result of transactions entered into under the MPSA between SGR and FCStone, as discussed in limited detail in the Complaint, SGR divulged extensive information to FCStone regarding crude oil acquisitions and sales, fuel oil acquisitions and sales, details regarding SGR's customers, including their identity and contact information, details regarding SGR's arrangements with terminal facilities both in the U.S. and Colombia, details regarding SGR's arrangements with and relationships with shipping companies for both barges and ocean going vessels.

101. In addition, of course, FCStone would have all of the details regarding any inventory purchase transactions and sales transactions as detailed in transactions executed under the MPFS. Included in those details would be the total volumes of Commodities, prices and customers of SGR.

### b. Volatile world oil markets due to Covid 19—SGR gets behind.

102. As everyone knows the Covid-19 pandemic had a dramatic effect on oil markets and the demand for crude oil and fuel products worldwide. As a result of these dramatic market swings, SGR got behind on paying for the repurchase of crude oil that was shipped to Colombia during the Summer of 2020.

103. At all points in time as detailed in the emails attached to the Complaint, SGR agreed to pay all amounts owed to FCStone.

### c. FCStone seeks to destroy SGR by disclosing confidential information to the market.

104. However, rather than keep information confidential as required under the MCA, FCStone set about disclosing to third parties numerous pertinent details regarding SGR and its transactions with FCStone in a manner that has caused great damage to SGR.

105. On numerous occasions that SGR can document, FCStone has contacted customers of SGR and potential customers of SGR and told those entities that SGR was in default and that SGR cannot pay its bills.

106. FCStone contacted the ship broker used by SGR with regard to the Miss Claudia and disclosed confidential information about SGR including stating that SGR was in default.

107. FCStone contacted multiple customers of SGR in Colombia directly and told them that SGR was in default and that any of those customers would have to deal with FCStone to purchase crude that is currently on board the Miss Claudia in Colombia.

108. FCStone contacted other commodity finance companies, including Glencore, and told them SGR was in default and cannot pay its bills.

109. The physical fuel oil trading market, while worldwide is really a small world. Once confidential information like that outlined above gets circulated in the market it is extremely damaging to SGR's ability to continue business.

**D. Cause of Action -- Breach of Contract**

110. The actions by FCStone in making numerous disclosures of confidential information to third parties is in direct breach of the MCA.

111. As a result of that breach, SGR has suffered massive damage to its ability to do business and continue to compete in the market. FCStone has contacted customers, inspection companies, terminals and shipping companies with a loud and clear message that SGR was in default, that FCStone had to "repossess" oil from SGR and that the oil was for sale at fire sale prices. That message spread like wild fire in the industry and the market. The global fuel oil

market is a small world and there are only a few mid-market companies competing in the same space as SGR in the Western Hemisphere. The actions of FCStone has ruined the reputation of SGR with the talk on the street being that SGR is going bankrupt.

112. The principle owner of SGR, Tommy San Miguel, has worked in this industry for over 30 years and worked hard to build a good reputation. He was and is known as a man of his word who always paid his bills. Since SGR started in 2011, it has made sure to live up to those same standards. SGR had committed to paying all amounts owed to FCStone as demonstrated by the emails attached to FCStone's complaint. But now, going forward, because of the actions of FCStone, it will be difficult, and perhaps impossible, to get suppliers and customers to enter into future trade agreements with SGR.

113. These actions have and will cause great damage to SGR. Its trajectory was very positive prior to the actions by FCStone. The earnings before income tax, depreciation and amortization ("EBITDA") for SGR had been as follows:

| 2016 | $ 1,491,932 |
| 2017 | $ 6,431,232 |
| 2018 | $ 13,097,658 |
| 2019 | $ 18,619,404 |

114. As a result of FCStone's improper disclosures to third parties in breach of the MCA, SGR's business has dropped dramatically. It is estimated that the monetary damage to SGR's earnings as a result of FCStone's breach of the MCA will cause SGR damages over the next three years of at least $30,000,000.

115. In addition, SGR is entitled to recover attorney's fees as provided by law for this breach of contract.

## X.  PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant/Counter-Plaintiff SGR Energy, Inc. pray that upon final hearing hereof:

    a.    Plaintiffs take nothing by this suit;

    b.    This Court enter judgment on behalf of Defendant SGR;

    c.    SGR recovers all damages for its counterclaim, together with all court costs, attorney's fees and other expenses recoverable by law;

    d.    Prejudgment and post-judgment interest; and

    e.    Any other relief to which they are justly entitled.

Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, PC**

By: */s/ D. Mitchell McFarland*
    **D. Mitchell McFarland**
    State Bar No. 13597700
    Federal ID No. 2379
    **J. Mark Deaton**
    State Bar No. 24069588
    Federal ID No. 1094927
    Houston, Texas 77002
    Telephone: (713) 222-1470
    Facsimile: (713) 222-1475
    Email: mmcfarland@munsch.com
    Email: mdeaton@munsch.com

**ATTORNEYS FOR DEFENDANTS SGR ENERGY, INC.**

## **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing was served upon the following counsel of record on the November 20, 2020 pursuant to the Federal and Local Rules of Civil Procedure:

**Yasser A. Madrid**
**Miles O. Indest**
McGuireWoods LLP
600 Travis Street, Suite 7500
Houston, Texas 77002
ymadriz@mcguirewoods.com
mindest@mcguirewoods.com

**Addison E. Fontein**
McGuireWoods LLP
2000 McKinney Ave., Suite 1400
Dallas, Texas 75201
afontein@mcguirewoods.com

> */s/ D. Mitchell McFarland*
> **D. Mitchell McFarland**