# Mutual Confidentiality Agreement

This Mutual Confidentiality Agreement ("Agreement") is entered into this 4th day of January, 2018 by and between **SGR Energy, Inc.,** a Texas corporation ("SGR Energy") and its subsidiaries, affiliates, employees and agents, and **FCStone Merchant Services, LLC,** a Delaware limited liability company ("FCStone Merchant Services") and its affiliates, employees and agents, collectively the "Parties".

**WHEREAS,** the Parties desire to discuss certain matters regarding potential business transactions between them; and

**WHEREAS,** in connection with these discussions, certain confidential and proprietary information regarding each party may be disclosed to the other to assist in the evaluation of the potential business transactions; and

**WHEREAS,** the Parties desire to establish the terms under which they will disclose certain confidential and proprietary information.

**NOW THEREFORE,** in consideration for the mutual promises contained herein, and other good and valuable consideration, receipt of which is expressly acknowledged, the Parties hereby agree and covenant as follows:

**Section 1.**     **Confidential Information.** Confidential Information shall mean:

(a)     any data or information that is competitively sensitive material, and not generally known to the public, including, but not limited to, products planning information, marketing strategies, plans, finance, operations, customer relationships, customer profiles, sales estimates, business plans, and internal performance results relating to the past, present or future business activities of the Parties, their parent corporations if applicable, their subsidiaries and affiliated companies and the customers, clients and suppliers of any of the foregoing; and

(b)     any scientific or technical information, design, process, procedure, formula, or improvement that is commercially valuable and secret in the sense that its confidentiality affords the applicable party a competitive advantage over its competitors; and

(c)     all confidential or proprietary concepts, documentation, reports, data, specifications, computer software, source code, object code, flow charts, databases, inventions, information, know-how, show-how and trade secrets, whether or not patentable or copyrightable and regardless of whether such information is a Party's property or the property of a third-party supplier (such as a software licensor), and

**EXHIBIT**

**A**

regardless of whether such information is specifically marked or identified as confidential.

Confidential Information includes without limitation, all of the Parties' documents, inventions, substances, engineering and laboratory notebooks, drawings, diagrams, specifications, bills of material, equipment, prototypes and models, and any other tangible manifestation of the foregoing, whether now existing or arising in the future.

**Section 2.     Confidentiality Obligations.**     Except     as     expressly authorized by prior written consent of the supplying party, the receiving party shall:

(a)     limit access to any Confidential Information received by it to its employees who have a need-to-know in connection with the evaluation of the potential business transaction, and only for use in connection therewith; and

(b)     advise its employees having access to the Confidential Information of the proprietary nature thereof and of the obligations set forth in this Agreement; and

(c)     take appropriate action by instruction or agreement with its employees having access to the Confidential Information to fulfill its obligations under this Agreement; and

(d)     safeguard all Confidential Information received by it using a reasonable degree of care, but not less than that degree of care used by the receiving party in safeguarding its own similar information or material; and

(e)     use all Confidential Information received by it solely for purposes of evaluating the potential business transactions with the supplying party and for no other purpose whatsoever; and

(f)     not disclose any Confidential Information received by it to third parties; and

(g)     not disclose the existence of the discussions to any third party; and

(h)     be responsible for any breach of the terms hereunder by the receiving party or any person who receives any Confidential Information from the receiving party.

The receiving party shall be responsible for, and shall not be excused or relieved from the foregoing obligations by reason of any improper, unlawful, illegal, fraudulent or criminal conduct by any of its employees or any other third party with access to the receiving party's facilities. The receiving party shall give the supplying party immediate notice of any unauthorized use or disclosure of any Confidential Information.

Upon the request of the supplying party, the receiving party shall (i) surrender to the supplying party all memoranda, notes, records, drawings, manuals and other documents or materials (and all copies of same) pertaining to or including the Confidential Information and (ii) destroy all memoranda, notes, records, drawings, manuals, records, and other documents or materials (and all copies of same) prepared by receiving party or any person who received any Confidential Information from the receiving party based on any information in the Confidential Information. Upon the return or destruction of such materials, the receiving party agrees to certify, in writing, that all of the foregoing materials have been surrendered to the supplying party. Provided, however, that an archival copy of the Confidential Information may be retained in the files of the receiving party solely for the purpose of and for so long as required by any law, court or regulatory agency or authority or its internal compliance procedures. Such archival copy shall be and remain subject to the restrictions set forth in this Agreement.

**Section 3.** **Exceptions to Confidentiality.** The obligations of confidentiality and restriction on use in Section 2 shall not apply to any information that the receiving party proves:

(a) Was in the public domain prior to the date of this Agreement or subsequently came into the public domain through no fault of the receiving party, or

(b) Was lawfully received by the receiving party from a third party free of any obligation of confidence to such third party; or

(c) Was already in the possession of the receiving party prior to receipt thereof, directly or indirectly, from the supplying party; or

(d) Is required to be disclosed to any governmental agency pursuant to applicable laws or regulations, or is required to be disclosed in a judicial or administrative proceeding after all reasonable legal remedies for maintaining such information in confidence have been exhausted including, but not limited to, (and except where such notice is prohibited by law, regulation or Exchange rule binding upon the receiving party) giving the supplying party as much advance notice of the possibility of such disclosure as practical so the supplying party may attempt to obtain a protective order concerning such disclosure, or take such other actions as necessary to stop such disclosure or to assure confidential handling of such Confidential Information; or

(e) Is subsequently and independently developed by employees, consultants or agents of the receiving party without reference to the Confidential Information disclosed under this Agreement.

**Section 4.** **Rights in Confidential Information.** Except as specifically provided for herein, this Agreement does not confer any right, license, interest or title in, to or under the Confidential Information to the receiving party. Except as specifically provided for herein, no license is hereby granted to the receiving party, by estoppel or otherwise under any patent, trademark, copyright, trade secret or other proprietary rights of the supplying party. Title to the Confidential Information shall remain solely in the supplying party, even if suggestions, comments, ideas or other improvements made by the receiving party are incorporated into the Confidential Information or related materials, unless otherwise agreed to in writing by the Parties.

**Section 5.** **Securities law acknowledgment.** The Parties acknowledge that they are aware of the fact that the United States securities laws prohibit them from purchasing or selling any of their respective publicly traded securities, or of any affiliated entities, based on any material, nonpublic information received from each other and agree to advise their respective Representatives accordingly. The securities laws also prohibit communication of such information to any other person under circumstances in which it is reasonably foreseeable that such person is likely to purchase or sell such securities.

**Section 6.** **Indemnity by the Receiving Party.** The receiving party agrees to indemnify and hold harmless the supplying party from and against any and all losses, claims, damages and expenses (including, but not limited to, attorneys' and experts' fees, costs of investigation and costs of settlement) which result from the receiving party's breach of this Agreement or unauthorized use or disclosure of the Confidential Information. The receiving party's indemnification obligations pursuant to the immediately preceding sentence shall include any obligation to indemnify and hold harmless the supplying party from and against any and all losses, claims, damages and expenses asserted by anyone claiming by, through or under the supplying party.

**Section 7.** **Equitable Relief.** The Parties agree that money damages would not be a sufficient remedy for breach of the confidentiality and other obligations of this Agreement. Accordingly, in addition to all other remedies that either party may have, the supplying party shall be entitled to specific performance and injunctive or other equitable relief as a remedy for any breach of the confidentiality and other obligations of this Agreement. The receiving party agrees to waive any requirement for a bond in connection with any such injunctive or other equitable relief.

**Section 8.** **Disclaimer.** The Confidential Information is provided by the supplying party to the receiving party "AS IS" and the supplying party EXPRESSLY DISCLAIMS ANY AND ALL WARRANTIES IN RESPECT THEREOF, INCLUDING, WITHOUT LIMITATION, ANY WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR ANY WARRANTY AGAINST INFRINGEMENTS. The supplying party shall have no liability whatsoever to the receiving party arising out of or related to the Confidential Information, whether such liability might arise in contract, tort or otherwise, and in no event shall the supplying party be liable for special, incidental, indirect, consequential or exemplary damages or for

lost profits, regardless or whether the supplying party was advised of the possibility of the same.

**Section 9.**   **Other Agreements.**   This Agreement is in addition to and not in lieu of whatever other agreements may exist between the Parties; provided, however, that unless any other such agreement is more protective of the supplying party, in the event of inconsistency between this Agreement and the other agreement, this Agreement shall control.

**Section 10.**   **Survival.**   The receiving party's obligations hereunder shall survive for a duration of two years beyond the termination of any related contract or other relationship between the Parties.

**Section 11.**   **Miscellaneous.**   This Agreement shall be binding upon the Parties hereto and their respective successors and assigns.   This Agreement may not be amended or modified except in a writing making express reference hereto, signed by both Parties.   This Agreement shall be governed by and construed in accordance with the laws of the State of New York, excluding its conflicts of laws rules.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date first written above.

FCStone Merchant Services, LLC
a Delaware limited liability company

By: _____     By: _____

Name: JUKA LAIHO           Name: Robert Shenk

Title: SVP                 Title: VP Energy


SGR Energy, Inc.
a Texas corporation

By: _____

Name: Tom San Miguel

Title: President / CEO

5