United States District Court
Southern District of Texas
**ENTERED**
July 14, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FCSTONE MERCHANT SERVICES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:20-CV-3693 |
| | § | |
| SGR ENERGY, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Pending before the Court are three Motions to Dismiss the Plaintiff FCStone Merchant

Services, LLC's ("FMS") amended complaint: Defendant SGR Energy, Inc's ("SGR") 12(b)(6)

Motion to Dismiss (Doc. No. 18); Defendant ST Shipping & Transport PTE Ltd.'s ("STS") Motion

to Dismiss under 12(b)(2) and alternatively under 12(b)(6) (Doc. No. 20); and Defendant Thomas

San Miguel's ("San Miguel") 12(b)(6) Motion to Dismiss (Doc. No. 31). All of the motions have

been fully briefed by the parties, and this Order will resolve all of them.

### I.      Background

The Plaintiff FMS is a "commodity marketing and arbitrage company." (Doc. No. 14 at 3).

It entered into a Master Purchase and Sale Agreement (the "Agreement") with SGR, which is a

"heavy fuel blending, sales, distribution, marketing and trading company for traditional petroleum

commodities and renewable fuels." (*Id.*). San Miguel is the Chief Executive Officer of SGR. Under

the Agreement, FMS would make a direct cash payment to SGR in exchange for taking title to

some of SGR's inventory. FMS would hold title to the inventory until SGR could find an end-

buyer. If SGR was unable to find an end-buyer, FMS could market and sell the commodity directly

to third parties without SGR's intervention. Under the Agreement, SGR would arrange to transport

the commodities to a location where it had located an end-buyer, and FMS would hold and maintain title until SGR paid FMS, at which point FMS would transfer title to the end-buyer.

Two specific transactions concerning large quantities of domestic crude oil covered by the Agreement are at issue in this case: (1) a voyage to load from Point Comfort, Texas and transport 160,000 barrels to Barranquilla, Colombia, which began on April 3, 2020 and was completed and fully discharged on June 15, 2020 (the "First Voyage"), and (2) a voyage to load from Point Comfort, Texas and transport an additional 160,000 barrels to Barranquilla, Colombia which began on July 9, 2020, but not completed until November 26, 2020 (the "Second Voyage").[1] For both voyages, SGR contracted with STS, a water shipping and transport company, to charter and transport the barrels.

As to the First Voyage, FMS alleges that the barrels were unloaded upon their arrival in Colombia, but that SGR never paid FMS the invoiced amount. FMS further alleges that, after SGR had already breached the Agreement by failing to timely pay FMS, SGR, through its CEO San Miguel, continued making alleged misrepresentations and alleged false assurances to FMS that SGE would be able to pay the sums owed once various customers paid SGR. FMS further alleges that SGR, through its CEO San Miguel, misrepresented that it had found a new buyer for the commodity. Eventually, SGR communicated to FMS that it would not pay the outstanding amount.

Meanwhile, and prior to the alleged misrepresentations by SGR, the Second Voyage began, also operated by STS. The vessel carrying the barrels arrived in Colombia on July 15, 2020, but did not unload its cargo or even dock. It was SGR's responsibility under the Agreement to pay STS in order to discharge the cargo. STS allegedly did not allow the unloading of the cargo because it had not been paid by SGR. Further, STS began charging SGR daily demurrage fees in the amount

---

[1] The actual voyage part of the Second Voyage was completed by mid-July, but as noted below, the cargo was not unloaded and the ship was not free to leave until November.

of $17,750. FMS was allegedly concerned about the crude oil spoiling the longer it remained on the vessel, so it requested access to the vessel to test the oil, which STS allegedly wrongfully delayed. FMS did eventually complete testing of the commodity while it was still on the vessel.

FMS alleges that it continually requested that SGR pay STS the charter and demurrage fees or pay FMS for the cargo, but SGR refused. In addition, STS refused to permit the unloading of the commodity because it had not yet been paid, and STS continued to assess daily demurrage fees. After discussions between FMS and STS, and a letter from the Colombian government that the vessel had exceeded its permissible time in Colombian waters, FMS requested STS to tell FMS the exact cost it believed STS was owed in order to unload the cargo. STS provided FMS an allegedly incorrect invoice. According to FMS, STS then unreasonably delayed responding to FMS's settlement offers, despite knowing that, from FMS's view, time was of the essence. Finally, FMS received a "correct" invoice for $2,839,223.89, though FMS still disagreed with the amount. The original charter cost was allegedly $450,000. FMS, under protest, wired $2,892,843.75 to STS to ensure that the vessel's cargo was unloaded. The next day, STS unloaded the cargo. FMS alleges that STS communicated to FMS that it was more profitable for STS to intentionally delay unloading the cargo to assess demurrage fees than it was for STS to operate in its usual course as a transport and shipping business.

FMS has brought the following claims: breach of contract against SGR; negligent misrepresentation against SGR, San Miguel, and STS; tortious interference against San Miguel; conversion, money had and received, and unjust enrichment against STS; and declaratory judgment against SGR and STS. The Defendants have moved to dismissed some of these claims under various legal theories.

## II.     STS's 12(b)(2) Motion

STS has moved to dismiss FMS's claims against it under Rule 12(b)(2), claiming that this Court cannot exercise personal jurisdiction over it. (*See* Doc. No. 20).

### A.     Legal Standard

When a district court rules on a Rule 12(b)(2) motion without a hearing, the plaintiff must make a *prima facie* showing of jurisdiction. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). The court may consider the contents of the record, including affidavits or other recognized methods of discovery, in deciding whether to exercise personal jurisdiction. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). Generally, the court accepts the plaintiff's non-conclusory, uncontroverted allegations as true, and resolves conflicts between the facts contained in the parties' affidavits in the plaintiff's favor. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).

A federal court may exercise personal jurisdiction over a non-resident defendant if: (1) the long-arm statute of the forum state allows the exercise of personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction over that defendant is consistent with Fourteenth Amendment to the United States Constitution. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009). The two-part jurisdictional inquiry collapses into a single step in this forum because the Texas long-arm statute extends to the limits of federal due process. Tex. Civ. Prac. & Rem. Code § 17.042; *Johnston*, 523 F.3d at 609; *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990). To meet the requirements of due process, the plaintiff must demonstrate: (1) that the non-resident purposely availed himself of the benefits of the forum state by establishing minimum contacts with the state; and (2) that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Mullins*, 564 F.3d at 398.

"Minimum contacts" can give rise to either specific personal jurisdiction or general personal jurisdiction. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). "[A] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Here, FMS has not claimed that STS is "essentially at home" in Texas. (*See* Doc. No. 23 at 9).

The court "may exercise 'specific' jurisdiction in a suit arising out of or related to the defendant's contacts with the forum." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). The Fifth Circuit has articulated a three-step analysis for specific jurisdiction: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). The touchstone of the minimum contacts inquiry is whether the defendant's conduct shows that it "reasonably anticipates being haled into court" in the forum state. *Id.*

## B.    Analysis

STS argues that it does not have sufficient minimum contacts with Texas to be subject to the state's long-arm statute. (*See* Doc. No. 20 at 11–12). Further, according to STS, any alleged wrongdoing by it occurred in Colombia, so any contacts it may have had with Texas do not give rise to FMS's causes of action against it. (*Id.*). FMS points to the following alleged contacts by STS with Texas to confer personal jurisdiction: (1) the docking of the vessel in Texas; (2) the

loading of FMS's crude oil in Texas; (3) STS operating two voyages from Texas for profit; and (4) engaging in business with Texas consumers like SGR. (*See* Doc. No. 23 at 10).

The Court finds first that these contacts with Texas satisfy the minimum contacts test. STS contracted with SGR, a Texas corporation, to load its vessel with oil in Point Comfort, Texas, to carry the cargo to Colombia, then to return to Point Comfort and repeat the process. STS directed these activities toward Texas and purposefully availed itself of the privileges of conducting activities in Texas, like using the docks at Point Comfort. *See McFadin*, 587 F.3d at 759. Texas clearly plays a significant role in STS's business.

Next, the Court finds that FMS's causes of action against STS do arise out of STS's Texas-related contacts. There is some dispute within the Fifth Circuit as to whether a "but-for" or a "but-for-plus" test should be applied when determining whether a plaintiff's claims "arise out of" a non-resident defendant's forum-related contacts. *See Breathwit Marine Contractors, Ltd. v. Deloach Marine Services*, LLC, 994 F. Supp. 2d 845, 852 (S.D. Tex. 2014) (explaining that the "but-for-plus" test is more stringent and that at least one commentator has concluded that it best characterizes Fifth Circuit law). The Court need not resolve this dispute because it finds, as the court did in *Breachwit*, that the facts of this case satisfy even the more stringent "but-for-plus" standard. In *Breachwit*, the court faced a remarkably similar question to the one this Court faces: "if a vessel begins a journey in Texas, and then commits a tort in another forum . . . , does the case 'arise out of or relate to' the defendant's Texas contacts so that personal jurisdiction exists in this forum?" 994 F. Supp. 2d at 847. The court there answered in the affirmative. There, as here, "[t]he voyage giving rise to this lawsuit had Texas as its starting point." *Id.* at 853. There, "[i]f [the defendant] had not purposefully directed its activities at Texas—by picking up a barge and cargo from a Houston-based client and towing them through the Texas waters until reaching Louisiana—

then the [tort would not have occurred]." *Id.* Similarly, here, if STS had not purposefully directed its activities at Texas—by loading its ship with the cargo from a Texas-based client and transporting it through Texas waters and into the ocean until reaching Colombia—then the alleged disputes giving rise to FMS's causes of action against STS would not have occurred. The Court therefore holds that FMS's claims against STS arise out of STS's contacts with Texas.

Last, the Court finds that the exercise of personal jurisdiction in this case is fair and reasonable. STS apparently conducts business with Texas companies, uses Texas docks, and its vessels travel through Texas waters. "These substantial benefits [STS] receives from Texas also impose on it the obligation of defending lawsuits in Texas when the conduct giving rise to the lawsuit has a Texas connection as this one does." *Id.* Just in the transactions that are the basis of this case, it was paid millions of dollars. This conduct also indicates that it would be reasonable for STS to "anticipate[] being haled into court" in Texas. *McFadin*, 587 F.3d at 759. Moreover, it did these activities in Texas at least twice. A Texas court may exercise personal jurisdiction over STS under these facts, and STS's motion to dismiss based on lack of personal jurisdiction is therefore denied.

### III.    The 12(b)(6) Motions

Each defendant has moved to dismiss all or some of FMS's claims under Rule 12(b)(6), claiming that FMS has failed to state a claim upon which relief can be granted.

### A.    Legal Standard

A defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

**B.    Analysis**

   **1.    SGR's Motion**

SGR has moved to dismiss only FMS's negligent misrepresentation claim against it. It argues that FMS has failed to state a claim of negligent misrepresentation for three independent reasons: (1) FMS fails to allege any independent injury apart from contractual damages; (2) FMS fails to identify a non-contractual duty owed by SGR to FMS; and (3) any alleged misrepresentation by SGR was a representation of potential future performance, and therefore not actionable. (*See* Doc. No. 18).

In Texas, the elements of a cause of action for negligent misrepresentation are: "(1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation." *Stolts v. Wells Fargo Bank, NA*, 31 F. Supp. 3d 876, 882 (S.D. Tex. 2014).

SGR first argues that FMS has failed to state a claim of negligent misrepresentation because FMS's only allegations are that it did not receive the benefit of its bargain under the Agreement. It is true that "Texas courts have held that benefit of the bargain damages are not recoverable in a claim for negligent misrepresentation." *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 454 (5th Cir. 2001). Instead, the plaintiff may recover only reliance damages, which are "measured as the out-of-pocket expenditures made by one party in reliance on the actions of another party, not by the amount of lost profits and sales." *Vandelay Hosp. Group LP v. Cincinnati Ins. Co.*, 3:20-CV-1348-D, 2020 WL 4784717, at *5 (N.D. Tex. Aug. 18, 2020) (quoting *Sterling Chems., Inc. v. Texaco Inc.*, 259 S.W.3d 793, 798 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). Here, however, FMS is not merely seeking the benefit of its bargain with SGR. FMS is seeking to recover the out-of-pocket costs that it paid to STS. FMS alleges that it allowed the vessels to remain at port, and did not insist on their immediate unloading, in reliance on SGR's alleged misrepresentations regarding its ability to pay and to find a buyer for the cargo. Had SGR not made such misrepresentations, according to FMS's complaint, then the vessel would have been unloaded sooner and the demurrage fees that FMS eventually paid to STS would not have been as expensive. This out-of-pocket injury is separate from FMS's alleged contract (benefit of the bargain) damages.

Further, for similar reasons, FMS has sufficiently pleaded a non-contractual duty owed to it by SGR. "In order for a tort duty to arise out of a contractual duty . . . , the tort liability must arise 'independent of the fact that a contract exists between the parties.'" *Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.*, 203 F. Supp. 2d 704, 719 (S.D. Tex. 2000) (quoting *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997)). Here, SGR allegedly breached its duty not to make misrepresentations to FMS—a duty that FMS had irrespective of the contract. FMS has sufficiently alleged that the misrepresentations SGR made regarding its ability to pay FMS after SGR had already breached the contract and SGR's ability to find a new buyer were separate and apart from the contract. Even if FMS and SGR had not executed the Agreement, SGR would be under a duty to not misrepresent to FMS whether it could pay for the crude oil and whether it had a buyer for the crude oil.

SGR's last argument fails as well. "Negligent misrepresentation must relate to a 'statement of existing fact rather than a promise of future conduct.'" *Stolts*, 31 F. Supp 3d at 882 n.5 (quoting *Scherer v. Angell*, 253 S.W.3d 777, 781 (Tex. App.—Amarillo 2007, no pet.)). SGR argues that FMS has only alleged that SGR represented that it could obtain a buyer in the future, so that such a misrepresentation cannot support FMS's claim. To the contrary, FMS alleged that SGR represented to FMS that it, at the time of the representation, had the funds to pay for the commodity and, subsequently, that SGR had found a potential buyer for the commodity. Those statements, as alleged, were statements of fact—that SGR had enough money and then that SGR had found a buyer. For these reasons, SGR's motion to dismiss FMS's negligent representation claim is denied.

## 2.    San Miguel's Motion

San Miguel has moved to dismiss both of FMS's claims against him: negligent representation and tortious interference. (*See* Doc. No. 14).

### a.    Negligent Misrepresentation

First, San Miguel makes many of the same arguments regarding negligent misrepresentation that the Court has already dismissed as to SGR. There is no need to repeat these arguments. San Miguel further argues that, because FMS has only alleged contractual damages, his claim actually sounds in contract, not tort, and an officer of a corporation is not personally liable on the corporation's contracts. The Court has already determined, however, that FMS has stated a plausible claim of negligent misrepresentation against SGR. FMS's allegations include that San Miguel was the individual making the misrepresentations on SGR's behalf. If FMS's allegations are believed, as they must be at this stage, then San Miguel can obviously be liable for his own tortious conduct. *See Bates Energy Oil & Gas v. Complete Oilfield Servs.*, 361 F. Supp. 3d 633, 672 (W.D. Tex. 2019). The motion to dismiss this claim is denied.

### b.    Tortious Interference

Next, San Miguel has moved to dismiss FMS's claim of tortious interference with existing contract and prospective business relations. According to San Miguel, he cannot be liable for tortious interference because such liability would amount to a finding that he tortiously interfered with his own contract.

In Texas, the elements of tortious interference with an existing contract are: "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss. *Prudential Ins. Co. of Am. v. Fin. Review Services, Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). "[W]hen the defendant serves the dual roles of the corporate agent and the third party who allegedly induces the corporation's breach . . . [,] the alleged act of interference must be performed in furtherance of the defendant's personal interests so as to preserve the logically necessary rule that a party cannot

11

tortiously interfere with its own contract." *Holloway v. Skinner*, 898 S.W.2d 793, 796 (Tex. 1995). "To show tortious interference, neither an agent's merely mistaken assessment of its principal's interests nor the possibility that the agent might have acted in its own interests and contrary to its principal's is enough." *Morgan Stanley & Co., Inc. v. Tex. Oil Co.*, 958 S.W.2d 178, 179 (Tex. 1997). Instead, "the plaintiff must show that the defendant acted in a fashion so contrary to the corporation's best interests that his actions could only have been motivated by personal interests." *Holloway*, 898 S.W.2d at 796.

Here, FMS has failed to plead facts sufficient to make such a showing. FMS has pleaded that San Miguel made misrepresentations to FMS, which allegedly interfered with FMS's contract with SGR. San Miguel made these alleged misrepresentations, however, *on SGR's behalf*, and after the contract had allegedly been breached. Further, the alleged misrepresentations presumably would have benefitted SGR by helping it to maintain a business relationship with FMS. While FMS did plead that "San Miguel acted willfully and intentionally to serve his own personal interests at SGR's expense," (Doc. No. 14 ¶ 173) this allegation does not have sufficient specificity to state a plausible claim. The pleadings do not reveal how any alleged act by San Miguel benefitted San Miguel exclusively and were at SGR's expense. This claim is dismissed.

Further, FMS has not identified any prospective business relations with which San Miguel interfered. Accordingly, this claim is also dismissed.

### 3.    STS's Motion

STS has moved to dismiss under Rule 12(b)(6) all of FMS's claims against it. (*See* Doc. No. 20). These are: conversion, money had and received, unjust enrichment, negligent misrepresentation, and declaratory judgment.

### a.   Conversion

To prove conversion under Texas law, "the plaintiff must prove that: (1) he legally possessed the property or was entitled to it; (2) the defendant wrongfully exercised dominion and control over the property, excluding the plaintiff; (3) the plaintiff demanded the property's return; and (4) the defendant refused." *Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir. 2009). STS argues that FMS has failed to state a claim of conversion because any dominion or control that STS exercised over the cargo was authorized by the contract to ship the cargo between STS and SGR. The argument that STS provides for this contention is based on interpretation of what the contract entitled STS to do and on factual disputes as to whether FMS truly demanded STS to discharge the cargo. Indeed, STS has attached ten exhibits containing evidence to its motion to dismiss. (*See* Doc. No. 20). These arguments are more suited to a motion for summary judgment. At this stage, the Court cannot say that FMS has failed to state plausible claim of conversion. Accordingly, STS's motion is denied without prejudice to being reasserted in a motion for summary judgment, at least with respect to FMS's conversion claim.

### b.   Money Had and Received and Unjust Enrichment

The Court will analyze the claims of money had and received and unjust enrichment together because they are closely related and because STS's motion to dismiss each claim is based on the same argument, namely, that they are precluded because a valid and enforceable contract covers the dispute. Under Texas law:

> A claim for "money had and received" is equitable in nature. *Stonebridge Life Ins. Co. v. Pitts*, 236 S.W.3d 201, 203 n.1 (Tex. 2007). "Money had and received is a category of general assumpsit to restore money where equity and good conscience require refund." *MGA Ins. Co. v. Charles r. Chesnutt, P.C.*, 358 S.W.3d 808, 813 (Tex. App.—Dallas 2012, no pet.). "A cause of action for money had and received is not premised on wrongdoing, but 'looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another.'" *Id.* (quoting *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex.

App.—El Paso 1997, no writ)). "In short, it is an equitable doctrine applied to prevent unjust enrichment." *Id.* "To prove a claim for money had and received, a plaintiff must show that a defendant holds money which in equity and good conscience belongs to him." *Id.*

*Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 302 n.4 (Tex. 2015). Further, "[a] party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Again, STS's arguments depend on contract interpretation that is not appropriate at the pleading stage. (*See* Doc. No. 20 at 17) (making argument that contract entitled STS to a possessory lien on the cargo). Further, FMS has properly alleged that it disputed the amount of demurrage fees, and only paid the fees to STS in protest and under duress. FMS has sufficiently pleaded its claim for money had and received, which is an equitable theory to prevent unjust enrichment. *See Torch Energy*, 473 S.W.3d at 302 n.4. The motion to dismiss is again denied without prejudice.

### c.   Negligent Misrepresentation

As stated previously, in Texas, the elements of a cause of action for negligent misrepresentation are: "(1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation." *Stolts*, 31 F. Supp. 3d at 882. STS argues that FMS has failed to sufficiently plead any false statements by STS that could form the basis of a negligent misrepresentation claim. To make this argument, STS explains that the alleged misstatements were in fact true. This, again, is a dispute more suitable for summary judgment. FMS's amended complaint, taken as true, alleges misstatements by STS that caused FMS to pay money to STS.

14

This plausibly alleges negligent misrepresentation under Texas law. The motion to dismiss is again denied without prejudice.

### d.    Declaratory Judgment

Last, STS moves to dismiss FMS's declaratory judgment claim. In its amended complaint, FMS "requests a declaration that SGR and STS, not Plaintiff, are responsible: (i) to reimburse Plaintiff for the excessive fees paid under protest to mitigate damages; and (ii) to pay any future fees that STS claims is owed by Plaintiff related to the Commodity." (Doc. No. 14 at 30). In this section of its complaint, FMS cites to the portion of the Texas Civil Practice and Remedies Code that makes up the Texas Declaratory Judgment Act. (*See id.* at 29–30). STS has moved to dismiss, arguing that the Texas Declaratory Judgment Act has no operation in federal court, even in a diversity action.

On this point, STS is not only timely, but also correct. The Texas Declaratory Judgment Act "functions solely as a procedural mechanism for resolving substantive 'controversies which are already within the jurisdiction of the courts.'" *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998) (quoting *Housing Authority v. Valdez*, 841 S.W.2d 860, 864 (Tex. App.— Corpus Christi 1992, writ denied)). As a state rule of procedure, it has no effect in federal court. Accordingly, the Court grants the motion to dismiss as to the claim for declaratory judgment, but grants FMS leave to replead this cause of action if it files a second amended complaint by July 30, 2021.

### IV.    Conclusion

For the foregoing reasons SGR's Motion to Dismiss (Doc. No. 18) is hereby DENIED; San Miguel's Motion to Dismiss (Doc. No. 31) is hereby DENIED IN PART and GRANTED IN PART; STS's Motion to Dismiss (Doc. No. 20) is hereby DENIED with respect to lack of personal

jurisdiction; and DENIED IN PART and GRANTED IN PART with respect to the remainder of

the motion.

Signed at Houston, Texas, this ___14th___ day of July, 2021.

_____
Andrew S. Hanen
United States District Judge