**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **FCSTONE MERCHANT SERVICES, LLC,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | **Civil Action No. 4:20–cv–03693** |
| | § | |
| **SGR ENERGY, INC., ST SHIPPING & TRANSPORT PTE LTD, and THOMAS SAN MIGUEL, individually,** | § | |
| | § | |
| *Defendants.* | § | |

**PLAINTIFF'S MOTION FOR RECONSIDERATION OF AUTOMATIC STAY AS TO ST SHIPPING & TRANSPORT PTE LTD, AND IN THE ALTERNATIVE, MOTION TO SEVER**

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

Plaintiff FCStone Merchant Services, LLC ("Plaintiff") files this Motion for Reconsideration of the Automatic Stay entered by this Court on September 9, 2022 [Dkt. No. 77] (the "Stay") as to non-debtor ST Shipping PTE LTD ("STS"), and in the alternative, Motion to Sever Plaintiff's claims as to STS. In support thereof, Plaintiff respectfully shows as follows:

## I.    INTRODUCTION

### A.  Relevant Factual Background

This lawsuit arises out of two voyages arranged and facilitated by the Defendants in this litigation (the "Voyages"): STS, Thomas San Miguel ("TSM") and SGR Energy, Inc. ("SGR" and together with TSM, "Debtors"). By way of the Voyages, Defendants delivered Plaintiff's crude oil from Texas to Colombia. As a result, Plaintiff has been damaged in excess of $5,000,000. Plaintiff seeks to recover these damages from the Defendants. As to STS, Plaintiff seeks to recover damages

1

caused by STS's refusal to allow Plaintiff to promptly unload its crude oil from the vessel used for the Voyages (the "Vessel"), and STS's scheme to charge excessive demurrage charges and fees. As a direct result of STS's actions, Plaintiff was forced to pay $2.8 million to STS under protest to avoid the continuing and irreparable harm to its depreciating crude oil. Plaintiff asserts claims for conversion, money had and received, unjust enrichment, negligent misrepresentation and declaratory judgment against STS based on its dilatory tactics and excessive fees[1]. Dkt. No. 49.

### B. The Bankruptcies

This lawsuit has been pending since October 27, 2020. Dkt. No. 1.  On or around November 15, 2021, after significant motion practice and delays caused by STS's attempt to avoid jurisdiction, SGR commenced a bankruptcy action that halted discovery. *See In re SGR Energy, Inc.*, Case No. 21-60090 (CML) in the Southern District of Texas, Victoria Division (the "First Bankruptcy"). Accordingly, on November 17, 2021, SGR filed a Notice of Suggestion of Bankruptcy in this litigation. Dkt. No. 60. As a result, this Court entered an Order Staying the Case pursuant to 11 U.S.C. § 362(a), halting this lawsuit entirely during the pendency of the First Bankruptcy. Dkt. No. 61. SGR's First Bankruptcy was dismissed on January 21, 2022 on SGR's own motion for dismissal "to workout and reorganize outside of the bankruptcy to minimize administrative costs." *See First Bankruptcy*, Dkt. Nos. 50, 64. On February 22, 2022, Plaintiff filed an Unopposed Motion to Lift the first Stay [Dkt. No. 65] which was granted on February 23, 2022. Dkt. No. 66.

---

[1] Plaintiff's claims against SGR and TSM are separate and distinguishable from Plaintiff's claims against STS. First, Plaintiff seeks to recover damages caused by SGR's failure to pay Plaintiff for more than 80,632 barrels of crude oil, which breached their Master Purchase and Sale Agreement. Second, Plaintiff seeks to recover damages caused by San Miguel, Chief Executive Officer of SGR, who knowingly and negligently procured substandard crude oil for Plaintiff and misrepresented SGR's financial wherewithal. Plaintiff acknowledges that it cannot pursue damages as to SGR until the Stay is lifted.

Since the dismissal of SGR's First Bankruptcy, Plaintiff diligently sought to prosecute this case again.  While STS used objections and delays to avoid discovery, SGR and TSM simply refused to respond to discovery or answer e-mails at all.  Ultimately, on July 22, 2022, SGR filed for Chapter 7 Bankruptcy which remains pending as *In re SGR Energy, Inc.*, Case No. 22-32050 (Bankr. S.D. Tex. July 22, 2022) (the "Second Bankruptcy"). As a result, this Court entered the second Stay on September 9, 2022 [Dkt. No. 77]. During the pendency of the Stay, on September 27, 2022, TSM and his wife, Tiffany Dawn San Miguel filed for Chapter 7 Bankruptcy styled *In re: Thomas and Tiffany San Miguel*, No. 4:22-032820 (Bankr. S.D. Tex. Sep. 27, 2022) (the "TSM Bankruptcy").

STS is the only non-debtor Defendant in this lawsuit.

**C.  STS's Dilatory Discovery Tactics**

Plaintiff has served two sets of discovery on STS—both of which were met with boilerplate objections and non-compliance.  Prior to the First Bankruptcy, Plaintiff served STS with Requests for Production and Interrogatories on September 29, 2021 (collectively, the "First Discovery Requests"), a true and correct copy of which is attached hereto as **Exhibit A**. Upon review, it was immediately apparent STS's responses and answers were riddled with deficiencies. For instance, STS's improper objections and responses did not allow Plaintiff to determine whether STS was withholding documents, whether STS conducted a reasonable search for the documents, whether STS had responsive documents in its possession, or if STS intended to supplement its responses to the Requests. Moreover, STS relied upon repetitive, untailored objections to avoid producing responsive documents and answering relevant interrogatories. *See STS's Responses to First Discovery Requests*, a true and copy of which is attached hereto as **Exhibit B**.

Accordingly, counsel for Plaintiff sent STS a Discovery Deficiency Letter on November 11, 2021, which highlighted many of the issues implicated by STS's deficient discovery responses. *See Deficiency Letter* attached hereto as **Exhibit C**. Thereafter, the Parties conferred multiple times about STS's discovery deficiencies. While the Parties made some progress in resolving the discovery dispute, resolution discussions reached an impasse following the commencement of the First Bankruptcy and the First Stay.

When the Court lifted the First Stay, Plaintiff continued its discussions with STS in an attempt to resolve the discovery disputes without judicial intervention. In the interim, Plaintiff served STS with additional discovery requests, to which STS responded to on July 18, 2022 (Plaintiff's "Second Set of Discovery Requests"). *See* **Exhibit D**. In response to these requests, STS dropped any semblance of compromise and blatantly *refused* to produce a *single document* or respond to a *single interrogatory*. In an attempt to confer, Plaintiff sent a *second* Deficiency Letter to STS on July 19, 2022. *See* **Exhibit E**.

Despite multiple discovery conferrals, STS refuses to produce additional documents or fully respond to Plaintiff's proper discovery requests. Still outstanding is clearly relevant information pertaining to STS's practices and policies for calculating and charging demurrage fees, STS's profits sent to its affiliates, and investigations by government officials related to bribery and the very scheme STS executed on Plaintiff.  Most importantly, after two (2) years of litigation, STS has still not provided a straight and simple answer as to how much profit STS and its affiliates made from Plaintiff's $2.8 million payment to STS.  Just like STS's dilatory tactics in discovery, STS (a non-debtor) now seeks to take advantage of the Stay to delay this litigation and avoid resolution on the merits. However, Plaintiff's claims against STS are separate and distinct from those against SGR and TSM. Moreover, STS is not a debtor in the Second or TSM Bankruptcy

Actions. Accordingly, Plaintiff respectfully seeks reconsideration of this Court's entry of the Stay as to STS only, and in the alternative, an order severing STS from the Stay.

## II.      LEGAL STANDARD

The Federal Rules permit a court to relieve a party from an order such as the Stay. Fed. R. Civ. P. 60; *see also*, *Hazim v. Schiel & Denver Publ'g, Ltd.*, 2015 U.S. Dist. LEXIS 119350 at *4-6, 2015 WL 5227955 (S.D. Tex. 2015).  Section 362(a)(1) of the Bankruptcy Code provides for an automatic stay of any judicial "proceeding against the debtor." *In re Divine Ripe, LLC*, 538 B.R. 300, 302 (Bankr. S.D. Tex. 2015) (citing 11. U.S.C. § 362(a)(1)). It is well established in the Fifth Circuit that the automatic stay imposed by 11 U.S.C. § 362 does not apply to actions against a non-debtor. *See In re TXNB Internal Case*, 483 F.3d 292, 301 (5th Cir. 2007); *Hamel-Schwuslt v. Country Place Mortg., Ltd.*, 406 Fed Appx. 906, 911 (5th Cir. 2010) (citing *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 544 (5th Cir. 1983)). Indeed, a stay may only apply to a non-debtor ***in limited circumstances*** where there is a special relationship between the debtor and the non-debtor. *See Reliant Energy Servs., Inc. v. Enron Can. Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) ("[A] bankruptcy court may invoke § 362 to stay proceedings against nonbankrupt codefendants where 'there is such an identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.'").

A party invoking a stay has the burden to show that it is applicable. *In re Divine Ripe, LLC*, 538 B.R. at 302; *see also,* 2 WILLIAM L. NORTON, JR., NORTON BANKRUPTCY LAW AND PRACTICE § 43:4 (3d ed. Supp. 2010) (stating that "the party seeking to extend the stay will bear the burden to show that 'unusual circumstances' exist to warrant an extension of the stay to a nondebtor").  Here, STS is unable to meet this high threshold.

5

### III.     ARGUMENT AND AUTHORITIES

This Court should issue an order amending the Stay as applicable only to the Debtors, and in the alternative, an order severing STS from the Stay. The Stay is inapplicable as to STS for three independent reasons. First, the protection of an automatic stay does not extend to a non-debtor as a matter of law. Second, there is no identity of interests or special relationship between the Debtor and the Non-Debtor STS to override Plaintiff's right to pursue its claims against STS. Third, the Stay prejudices Plaintiff's ability to timely litigate its claims as to STS.

### A.  The Stay does not Extend to STS as a Matter of Law

Section 362(a) "does not operate as an automatic stay on claims against the co-defendants of [the Debtor]." *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 544 (5th Cir. 1983); *see also*, *Beran v. World Telemetry, Inc.*, 747F. Supp. 2d 719, 722 (S.D. Tex. 2010) ("Ordinarily, the automatic stay under § 362 does not apply to actions against a [non-debtor]."). Indeed, the reach of an automatic stay is limited. For example, in *Wedgeworth v. Fibreboard Corporation*, the Fifth Circuit refused to enforce an automatic stay for the benefit of alleged co-tortfeasors of two bankrupt companies in ongoing asbestos personal injury litigation. 706 F.2d 541 (5th Cir. 1983). Indeed, "[b]y its terms the automatic stay applies only to the debtor, not to co-debtors…***nor to co-tortfeasors***." *GATX Aircraft Corp.*, 768 F.2d at 716 (emphasis added) (noting the purpose of a stay is "to protect the debtor's assets, provide temporary relief from creditors, and further equity of distribution among the creditors by forestalling a race to the courthouse."). Importantly, "while the stay protects the debtor who has filed a bankruptcy petition, litigation can proceed against other co-defendants." *Id.*

Similar to the non-debtor in *Wedgeworth*, STS is a non-debtor that should not benefit from the Stay to avoid its discovery and monetary obligations to Plaintiff.  Because the automatic stay

promulgated by § 362 does not halt all relief against a non-debtor (including a co-defendant to a debtor *in separate litigation*), the Stay should be reconsidered or severed as to STS. *See* 11 USCS § 362(a).

**B. STS lacks a Special Relationship with the Debtors to Benefit from the Stay**

Despite STS's attempt to take undue advantage of the Stay, Section 362 is "rarely…a valid basis on which to stay actions against non-debtors." *Arnold v. Garlock, Inc.*, 278 F.3d 426, 436 (5th Cir. 2001). A non-debtor can seek protection from a Section 362 stay only in limited circumstances where the interests of the debtor and non-debtor are *aligned* and *indistinguishable*. *See Abrams v. Integrated Pro Servs.*, 2015 U.S. Dist. LEXIS 158679, 2015 WL 7458604 (E.D. La. 2015) (A bankruptcy court "may invoke § 362 to stay proceedings against non-bankrupt codefendants where there is such an identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor."); *see also*, *Reliant Energy Servs., Inc.*, 349 F.3d at 825 (same).[2] Defendants have never alleged they are aligned and indistinguishable—nor that "there is such an identity between [SGR] and [STS] that [SGR] may be said to be the real party defendant and that a judgment against [STS] will in effect be a judgment or finding against the [SGR]."  Such a connection simply does not exist between SGR and STS in this lawsuit.

---

[2] *See also, In re S.I. Acquisition, Inc.*, 817 F.2d 1142 at 1148 (5th Cir. 1987) ("[A] section 362(a)(1) stay generally applies only to bar proceedings against the debtor, but some courts have recognized that in circumstances where the debtor and the nonbankrupt party can be considered one entity or as having a unitary interest, a section 362(a)(1) stay may suspend an action against a nonbankrupt codefendant."); *Federal Life Insurance Company (Mutual) v. First Financial Group of Texas, Inc.*, 3 B.R. 375, 376 (Bankr. S.D. Tex. 1980) (denying motion to sever stay where plaintiff's allegations against non-debtor defendants were "inextricably interwoven" with those of the debtor); *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985) (acknowledging that the *First Financial* court instituted a stay "because the allegations raised against co-defendants who were principals of the debtor were 'inextricably interwoven' with the claims against the debtor," making severance inapt).

Here, the facts supporting Plaintiff's claims against STS are separate and distinct from the claims Plaintiff brought against SGR. Specifically, Plaintiff's claims against STS arise from STS's independent actions and omissions in holding Plaintiff's oil hostage, stalling the offloading of the Vessel, and charging excessive costs and fees, resulting in Plaintiff's payment under protest to STS in the amount of $2.8 million. STS operated the Vessel and was paid $2.8 million by Plaintiff under protest, not by SGR. Separately, Plaintiff's claims against SGR arise from SGR's breach of a Master Purchase and Sales Agreement, under which SGR failed to pay for a financing arrangement or provide quality crude oil. Notably, the fact that Plaintiff's claims against SGR and STS involve the same voyages (at least during *part* of the relevant timeline) is not dispositive. Indeed, the mere "presence of identical allegations against the debtor and non-debtor defendant [is] an insufficient ground to extend the stay to the [non-debtors]." *Beran*, 747 F. Supp. 2d at 724.

In addition, the limited situations that permit a rare extension of a stay to the co-defendant of a debtor are not present here. Such situations require that both the non-debtor and debtor have similarly situated positions in the litigation such that: (1) their interests are unitary; or (2) any judgment rendered against a non-debtor would negatively impact the debtor. *GATX*, 768 F.2d at 716. But, STS's positions in the litigation are not unitary with the Debtors. Nor can it be said that the Debtors and STS have a special relationship as a result of aligned interests in this lawsuit. Conversely, STS has a cross-claim pending against SGR. Dkt. No. 51. Their respective interests in this lawsuit are unaligned.

In sum, Plaintiff's claims against STS are based on STS's independent actions as a unique party, distinct from SGR and TSM, and Plaintiff's claims against STS should be severed from the Stay.

**C.  Plaintiff Should be Permitted to Litigate its Claims as to STS in the Interests of Justice**

A court may maintain a stay in litigation in the interest of justice and to control their dockets, but it should not be used lightly. *Wedgeworth*, 706 F.2d at 544-545. Proper use of this authority calls for the exercise of judgment, which must weigh competing interests and maintain an even balance. *Id.[3]*  This Court also favors "speedy resolution of disputes."  *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, No. CV H-14- 3428, 2017 WL 3620590, at *4 (S.D. Tex. Aug. 23, 2017) ("The public interest . . . favors speedy resolution of disputes" and "a stay will not further judicial economy because . . . most of the discovery will need to be conducted even if the [intervening proceeding] is successful."). When considering whether to stay a matter pending resolution of a separate action, the Fifth Circuit has also considered the potential prejudice to the parties opposing or seeking the stay, and "other difficulties inherent in the general situation, including potential judicial inefficiency." *Stanford v. Liberty Mut. Grp., Inc.*, 2019 U.S. Dist. LEXIS 157647 at *9 (N.D. Miss. 2019).

Here, the interest of justice opposes a continued Stay as to Plaintiff's claims against STS. Plaintiff has a strong interest in promptly resolving its claims as to STS—which are separate and distinct from its claims pending against SGR and TSM.  Plaintiff should be permitted to pursue its claims in a timely fashion, when witness accounts are fresh, and evidence is easily accessible. Plaintiff and STS were actively engaged in discovery, and in discussions about scheduling relevant depositions, when SGR became involved in a *second* bankruptcy.  This stalled Plaintiff's progress as to STS *again.*  Moreover, Plaintiff seeks to be made whole from the damages it incurred from

---

[3] Outside of an automatic stay, this Court has also set forth four factors "traditionally considered" in determining whether a stay of proceedings should be granted: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *ClipBandits, LLC v. Samora*, No. 4:20-CV-03054, 2020 WL 7388629, at *2 (S.D. Tex. Dec. 16, 2020)

STS's multi-million dollar windfall as soon as possible.  Plaintiff would be inequitably prejudiced if STS continues halting all discovery and progress based solely on the Debtors' respective Bankruptcy Actions—wherein the Debtors collectively have creditors seeking hundreds of millions of dollars.  Moreover, because the Bankruptcy Actions were just commenced (for the second time), they are therefore not likely to conclude in the immediate future.  In the interests of justice and the efficacy of this Court, Plaintiff respectfully requests that this Court amend the Stay to include Plaintiff's claims against the Debtors only, and in the alternative, enter an order severing Plaintiff's claims against STS from the Stay.

## IV.    CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that the Court enter an order amending the Stay to apply to the Debtors *only*, and in the alternative, an order severing Plaintiff's claims against STS from the Stay.

Dated: October 6, 2022                         Respectfully submitted,

                                               MCGUIREWOODS LLP

                                               */s/ Yasser A. Madriz*
                                               **Yasser A. Madriz**
                                               Federal ID No. 39080
                                               State Bar of Texas No. 24037015
                                               845 Texas Ave., 24th Floor
                                               Houston, Texas 77002
                                               823-255-6361 Telephone
                                               832-214-9277 Fax
                                               ymadriz@mcguirewoods.com

                                               **ATTORNEY-IN-CHARGE FOR**
                                               **PLAINTIFF FCSTONE MERCHANT**
                                               **SERVICES, LLC**

OF COUNSEL:

**Miles O. Indest**
Federal ID No. 3070349
State Bar No. 24101952
*mindest@mcguirewoods.com*
845 Texas Ave., 24th Floor
Houston, Texas 77002
713-353-6681 Telephone
832-255-6381 Fax

**Addison E. Fontein**
Federal ID 3530304
State Bar No. 24109876
*afontein@mcguirewoods.com*
2000 McKinney Ave., Suite 1400
Dallas, Texas 75201
214-932-6436
F: 469-372-3891

## CERTIFICATE OF CONFERENCE

The undersigned hereby acknowledges that on September 23, 2022, the relief sought in this Motion was discussed with Counsel for STS who advised that STS is *opposed*.

*/s/ Miles O. Indest*
Miles O. Indest

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 6th day of October 2022 a true and correct copy of the foregoing Response was served via the Court's electronic case filing system (CM/ECF) to all parties registered to receive such notice in the above-captioned case.

*/s/ Addison Fontein*
Addison Fontein