IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| FCSTONE MERCHANT SERVICES, | § | |
| LLC | § | |
| | § | |
| *vs*. | § | C.A. NO. 4:20–cv–03693 |
| | § | |
| SGR ENERGY, INC., *et al*. | § | |

***ST SHIPPING & TRANSPORT PTE LTD'S OPPOSITION TO FCSTONE MERCHANT SERVICES, LLC'S MOTION FOR RECONSIDERATION OF THE AUTOMATIC STAY AND ALTERNATIVE MOTION TO SEVER***

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

I.    INTRODUCTION ...................................................................................................... 1

   A.    Factual Background ............................................................................................ 4

   B.    FMS's Inaccurate and Improperly Raised Discovery Contentions ................................. 8

II.   LAW AND ARGUMENT ......................................................................................... 8

   A.    Severance of the Claims is Inappropriate .......................................................... 8

     1.    The claims against ST Shipping and SGR arise out of the same transactions and occurrences. .......................................................................................................... 9

     2.    The claims present common questions of law or fact. .............................. 10

     3.    Severance would not promote settlement or judicial economy. ............... 11

     4.    Severance will cause prejudice to ST Shipping and SGR. ....................... 12

     5.    All the claims require the same witnesses and documentary proof. .......... 13

   B.    This Court Properly Stayed the Action. ........................................................... 13

III.  CONCLUSION ........................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. Integrated Pro Servs., LLC*,
No. 07-8426, 2015 WL 7458604  (E.D. La. Nov. 24, 2015)................................. 15

*Amie v. City of Jennings, La.*,
No. 2:03-CV-20112005, WL 3007009  (W.D. La. Nov. 8, 2005)......................... 12

*Aspen Technology, Inc. v. Kunt*,
No. 4:10–cv–1127, 2011 WL 86556  (S.D. Tex. Jan. 10, 2011) ............................ 8

*Austin v. Kroger Texas, L.P.*,
864 F.3d 326 (5th Cir. 2017) .................................................................................. 2

*Blundell v. Home Quality Care Home Health Care, Inc.*,
No. 3:17-cv-1990-L-BN, 2017 WL 5889715 (N.D. Tex. Nov. 29, 2017)............................ 15

*ClipBandits, LLC v. Samora*,
No. 4:20-CV-03054, 2020 WL 7388629 (S.D. Tex. Dec. 16, 2020)..................................... 17

*El Aguila Food Products, Inc. v. Gruma Corp.*,
167 F.Supp. 2d 955 (S.D. Tex. 2001) ................................................................... 12

*Federal Life Insurance Company (Mutual) v. First Financial Group of Texas, Inc.*,
3 B.R. 375 (S.D. Tex. 1980) .................................................................................. 14

*GATX Aircraft Corp. v. M/V Courtney Leigh*,
768 F.2d 711 (5th Cir. 1985) ................................................................................. 14

*German by German v. Federal Home Loan Mortgage Corp.*,
896 F.Supp. 1385 (S.D.N.Y. 1995) ....................................................................... 12

*Gulfmark Offshore, Inc. v. Bender Shipbuilding & Repair Co.*,
No. 09–249–WS–N, 2009 WL 2413664 (S.D. Ala. Aug. 3, 2009) ................................ 14, 15

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
No. CV H-14- 3428, 2017 WL 3620590 (S.D. Tex. Aug. 23, 2017) ..................................... 17

*In re Ramu Corp.*,
   903 F.2d 312 (5th Cir. 1990) ................................................................................ 2

*In re Rolls Royce Corp.*,
   775 F.3d 671 (5th Cir. 2014) ................................................................................ 9

*In re Silica Prods. Litig.*,
   398 F. Supp. 2d 563 (S.D. Tex. 2005) .................................................................. 9

*Kreisler v. Goldberg*,
   478 F.3d 209 (4th Cir. 2007) .............................................................................. 14

*Lanard Toys Ltd. v. Toys "R" Us-Delaware, Inc.*,
   No. 3:15-CV-849-J-34PDB, 2017 WL 5256870 (M.D. Fla. Nov. 13, 2017) ........ 15

*Landis v. North American Co.*,
   299 U.S. 248 (1936) ............................................................................................ 14

*Matter of S.I. Acquisition, Inc.*,
   817 F.2d 1142 (5th Cir. 1987) ............................................................................ 14

*MyMail, Ltd. v. Am. Online, Inc.*,
   223 F.R.D. 455 (E.D. Tex. 2004) .......................................................................... 9

*Perez v. Grupo TMM, S.A.B.*,
   No. 09–136,2009 WL 926991 (S.D. Tex. April 1, 2009) ..................................... 11

*Tex. Instruments Inc. v. Citigroup Global Mkts., Inc.*,
   266 F.R.D. 143 (N.D. Tex. 2010) .......................................................................... 9

*United States v. 0.2853 Acres of Land, More or Less, Located in Dallas County, Tx.*,
   3:16-CV-2814-S-BN, 2019 WL 5000161 (N.D. Tex. Sept. 16, 2019) ................... 9

*Wedgeworth v. Fireboard Corp.*,
   706 F.2d 541 (5th Cir. 1983) ....................................................................... 14, 17

**Statutes**

11 U.S.C. § 362 ...................................................................................................... 1

**Rules**

Federal Rules of Civil Procedure 20(a) ..................................................................... 9, 10

Federal Rules of Civil Procedure 23(f) ........................................................................ 17

Federal Rules of Civil Procedure 54(b) ......................................................................... 2

Judge Hanen R. Civ. P. 8.A ........................................................................................... 8

TO THE HONORABLE JUDGE ANDREW S. HANEN

Defendant ST Shipping & Transport Pte Ltd. ("ST Shipping") respectfully submits this Opposition to Plaintiff FCStone Merchant Services, LLC ("FMS" or "Plaintiff")'s Motion for Reconsideration of Automatic Stay as to ST Shipping, and alternative Motion to Sever (the "Motion for Reconsideration") (Dkt. No. 78):

## I.    INTRODUCTION

Plaintiff's Motion for Reconsideration seeks to lift in part the Court's discretionary stay order entered on September 9, 2022 [Dkt. No. 77], in response to SGR Energy, Inc.'s ("SGR") involuntary Chapter 7 Bankruptcy, *In re SGR Energy, Inc.*, Case No. 22-32050 (Bankr. S.D. Tex. July 22, 2022). The Motion for Reconsideration purports to seek reconsideration of an "Automatic Stay as to ST Shipping. . . ." The motion contends that no automatic stay applies to ST Shipping; the automatic stay in the bankruptcy case applies to co-defendant SGR. ST Shipping concurs, and would have so stated if Plaintiff's counsel had sought to discuss the matter as required before filing the motion. However, the motion wrongly further seeks reconsideration of this Court's proper exercise of discretion in entering the stay of the action, not of the statutory automatic stay of all proceedings against the bankruptcy debtor, SGR.[1]

Plaintiff could have, and should have, first asked the bankruptcy court to lift the automatic stay as to SGR before making this application, which could resolve the issue if that court granted such relief. *See* 11 U.S.C. § 362(d).

Rule 54(b) of the Federal Rules of Civil Procedure "allows parties to seek reconsideration of interlocutory orders and authorizes the district court to 'revise at any time' 'any order or other

---

[1] The Court's stay order issued prior to another bankruptcy filing by another co-defendant, Tommy San Miguel ("San Miguel"), and Tiffany Dawn San Miguel for voluntary bankruptcy under Chapter 7, styled *In re: Thomas and Tiffany San Miguel*, No. 4:22-032820 (Bankr. S.D. Tex. Sep. 27, 2022). An automatic stay, therefore, likewise applies to claims against San Miguel as a bankruptcy debtor in that case and a co-defendant in the instant action. *See* 11 U.S.C. § 362

decision that does not end the action." *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (quoting Fed. R. Civ. P. 54(b)) (alterations and internal quotation marks omitted).  As the Court's order staying the case was interlocutory, Rule 54(b) governs a motion for reconsideration. "Under Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Kroger Texas*, 864 F.3d at 336 (internal quotation marks and citations omitted).  Plaintiff offers no reasonable ground to reconsider the Court's discretionary stay in control of its docket, based on the automatic stay against SGR, and the record lacks any basis for doing so otherwise.

Plaintiff had filed claims against SGR, San Miguel and ST Shipping; ST Shipping filed a counterclaim against FMS and a crossclaim against SGR, and SGR filed a counterclaim against FMS.  Plaintiff does not dispute that the Court has "general discretionary power to stay proceedings before it in control of its docket and in the interests of justice," and did so here.  *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990).  Indeed, Plaintiff recognized and addressed this power in passing with a misleading paragraph at page 9 of its motion.  Plaintiff also wrongly suggests that the standard of review for extending an automatic stay to a non-debtor under 11 U.S.C. § 362 applies here to ST Shipping and constitutes a "high threshold." (Motion at 5)  Yet, that contention ignores that ST Shipping is not so contending, and conflates the automatic stay with the Court's discretionary stay entered here.   Moreover, the Court has discretion to enter such a stay where, as here, the record demonstrates that the claims arise from the same transactions and occurrences and raise common questions of law and fact.  Plaintiff does not contend the Court erred or overlooked any fact.

Here, Plaintiff brought claims against ST Shipping in this action knowing that defendants SGR and San Miguel were in financial straits.  ST Shipping respectfully submits that Plaintiff knew that its claims against ST Shipping were unmoored from any factual support.  Plaintiff knew that no evidence supports its allegation that ST Shipping refused an instruction to discharge the cargo.  Plaintiff knew that neither Plaintiff nor SGR ever so instructed ST Shipping from the time the M/T MISS CLAUDIA arrived at Colombia on July 9, 2020, until SGR and Plaintiff gave the first instruction to discharge on November 25, 2020.  In its initial disclosures and document production to date, Plaintiff has yet to produce or identify any evidence that Plaintiff requested discharge of the cargo and ST Shipping refused as alleged in the Amended Complaint.  Indeed, none exists.

On this record, allowing the case to proceed piecemeal against only ST Shipping would prove inefficient, duplicative, and wasteful of court and party resources, and would cause undue prejudice to ST Shipping and the bankruptcy defendants SGR and San Miguel.  Pretrial discovery - - including depositions of at least 3 FMS witnesses, 3 ST Shipping witnesses, at least 2 witnesses of SGR and potential non-party witnesses - - and motion practice would need to be performed once without two of the three defendants, SGR and San Miguel, and then again with their interests represented.  Discovery issues among the parties would need be decided once without SGR and San Miguel's participation, and then again with their participation.  Thus, as these claims and defenses are inextricably intertwined, no reasonable basis exists to upset the Court's sound exercise of discretion in ordering the stay of this entire action; the stay is necessary and proper, promotes judicial economy and avoids undue prejudice to multiple parties.

Moreover, Plaintiff could first pursue, but has not pursued, a less burdensome alternative to severance or lifting of this Court's stay.  For example, as a named creditor in both the SGR and

San Miguel bankruptcies, Plaintiff has not asked the bankruptcy court to lift the automatic stay to allow discovery to proceed in this action with SGR and San Miguel. Plaintiff's Motion offers no explanation for not doing so. Plaintiff also failed to mention that Plaintiff is a named creditor in both those bankruptcy proceedings. At a minimum, the court's discretionary stay should remain in effect until the Plaintiff shows that Plaintiff moved to lift the automatic stay in the bankruptcy court to allow this action to proceed against SGR and San Miguel as well, and that court granted or denied the application.

### A.   Factual Background

This action arises out of the same transactions and occurrences and presents common questions of law: the claims and defenses relate to the same three ocean shipments of cargo from Texas to Colombia, and the same three contracts of carriage, including the same ocean bills of lading and charterparties among the same three parties: FMS, SGR and ST Shipping.

In early 2020, SGR and Plaintiff shipped two prior shipments of crude oil from Texas to Colombia, each on vessels chartered from ST Shipping. Both voyages were performed without incident, and SGR and Plaintiff paid the freight and demurrage as required by the contracts of carriage for those vessels.

ST Shipping then chartered the MISS CLAUDIA (the "Vessel") to SGR under a voyage charter dated June 25, 2020 (the "Voyage Charter"). On or about July 9, 2020, pursuant to the Voyage Charter, the Vessel loaded a cargo of crude oil (the "Cargo") at Point Comfort, Texas, denoted by three bills of lading issued for FMS as the "Shipper" of the Cargo, and incorporated the terms and conditions of the Voyage Charter as part of the contract of carriage between Plaintiff and ST Shipping. Under the Voyage Charter, as incorporated into the contract of carriage with FMS, SGR was required to pay hire in the amount of $450,000 and demurrage at the rate of

$17,750 per day before discharge of the Cargo; and the Charter expressly provided ST Shipping a maritime lien over the Cargo for the payment of freight and demurrage. (Dkt. No. 20, ST Shipping's Motion to Dismiss Amended Complaint at ¶12; Recap, Exhibit 1 at 5)

Upon the Vessel's arrival in Barranquilla, Colombia on July 15, 2020, neither SGR nor FMS provided instructions to discharge the Cargo. Despite daily notices of the Vessel's readiness to discharge the Cargo, SGR and FMS issued no instruction to discharge for months. They went silent - - and they have produced in discovery to date not a single piece of evidence to show otherwise, despite the baseless allegations in the Amended Complaint. (*See e.g.* Dkt. No. 14, Plaintiff's First Amended Complaint at ¶63, 72, 86, 91-92)

Despite repeated requests by ST Shipping to Cargo interests for instructions to discharge, neither SGR nor FMS provided an instruction to discharge during that time. From October through the end of November, they continued to refuse ST Shipping's requests to provide instructions to discharge. (Dkt. No. 20, ST Shipping's Motion to Dismiss Amended Complaint at ¶11) Indeed, it is undisputed that, since SGR and FMS kept the ship waiting so long in Colombian waters without discharging, Colombian authorities threatened to penalize the ship and required the ship to depart Colombian waters and then re-enter. On November 19, 2020, ST Shipping notified SGR and FMS of their lien against the Cargo for the unpaid freight and demurrage. (*See* Dkt. No. 20, Exhibit 9 at 2.) FMS asked ST Shipping to allow an inspection of the Cargo; which ST Shipping allowed immediately, even moving the Vessel as required by the port authorities. FMS then asked ST Shipping to revise the invoices to name FMS so they could pay the invoices, which ST Shipping promptly arranged just before the Thanksgiving holiday. Finally, on November 25, 2020, SGR finally provided instructions to discharge the Cargo at Barranquilla, Colombia, and FMS remitted payment to ST Shipping in the amount of $2,892,843.75, towards satisfaction of the outstanding

freight and the accrued demurrage through the expected discharge date of November 27, 2020. (Dkt. No. 20, ST Shipping's Motion to Dismiss Amended Complaint at ¶14; Vessel Statement of Facts, Exhibit 5 at 5)

As Plaintiff acknowledges, SGR breached its duty to ST Shipping to pay charter hire and demurrage fees. Plaintiff admits SGR's "failure to pay for the Charter cost and demurrage fees incurred to permit the proper discharge of the Vessel." (Dkt. No. 14, Amended Complaint at ¶¶ 54, 136). Plaintiff further acknowledges that SGR's breach of the alleged Agreement with FMS, by failing to pay all charter costs and demurrage, required Plaintiff to pay the charter hire costs and demurrage fees in accordance with Plaintiff's obligations under the Agreement. (Dkt. No. 14, Amended Complaint at ¶¶ 14, 48, 50, 54). Accordingly, the parties' dispute arises out of the same transactions and occurrences – SGR's breach of its duties under the Agreement with FMS to pay all charter hire and demurrage owed under the Voyage Charter and the ocean bill of lading, for which FMS allegedly attempted to mitigate its damages and paid, and now seeks recovery from ST Shipping by alleging claims with no evidentiary support.

Further, FMS well knew SGR's financial instability from the outset of the litigation giving rise to the instant motion. As FMS alleged in its First Amended Complaint (Dkt. No. 14):

> **SGR's Financial Condition**
> 136.   SGR's financial instability creates additional concerns as it is entirely unclear when SGR will pay for the Commodity pursuant to the Agreement, and as discussed above, SGR failed to pay for the Charter cost and demurrage fees incurred to permit the proper discharge of the Vessel.
>
> 137. Indeed, SGR has no plausible plans to pay Plaintiff under the terms of the Agreement.
>
> 138.   Dunn & Bradstreet, a resource accessible to the public, has rated SGR as a "high risk level," with "significant financial stress and behavior concerns" and "very high potential for severely

delinquent payments." *See* D&B Report, attached hereto as Exhibit 28.

139.   Moreover, through correspondence and oral communications, Defendant SGR has advised it is near insolvent.

Despite knowing SGR's uncertain financial condition, FMS filed the instant suit against both SGR and ST Shipping, and continued to litigate its claims for almost two years.  FMS now seeks to sever its claims against ST Shipping from those against SGR despite asserting in the past that the claims between the parties are inextricably interwoven.

To date, FMS and ST Shipping have served and responded to discovery requests for documents and notices of deposition, and have served discovery on SGR.  Further, FMS served multiple notices of depositions and subpoenas on third parties requesting documents and depositions of a non-party affiliated with ST Shipping.  Counsel for FMS and ST Shipping have attempted to resolve the discovery issues with some success, but differences remain for which those parties have agreed to seek the Court's assistance.

On March 16, 2022, following the termination of the stay issued pursuant to SGR's first bankruptcy action, the Court issued an Amended Discovery Schedule and Trial Setting [Dkt. No. 69].  FMS and ST Shipping proceeded with discovery, including the exchange of documents in response to the requests for production, in accordance with the Amended Discovery Schedule.  During this period, SGR provided only limited discovery responses.  On July 22, 2022, SGR's creditors filed the involuntary Chapter 7 Bankruptcy, *In re SGR Energy, Inc.*, Case No. 22-32050 (Bankr. S.D. Tex. July 22, 2022).  In recognition of this bankruptcy proceeding, ST Shipping filed a Notice of Bankruptcy with the Court [Dkt. No. 76].  Thereafter, San Miguel filed a separate bankruptcy proceeding in the same court.  After the SGR involuntary bankruptcy filing, this Court

*sua sponte* entered an order to stay the case, and ordered that "all pending motions are MOOT, but may be summarily re-urged if the automatic stay is lifted." [Dkt. No. 77 – Order Staying Case]

### B. FMS's Inaccurate and Improperly Raised Discovery Contentions

Contrary to this Court's rules, FMS's Motion for Reconsideration includes allegations of discovery issues not germane or appropriate to the instant motion. This Court's rules require the parties to attempt to resolve all discovery issues, failing which the parties may request a court conference, and then submit brief letters outlining their disputes. *See* Judge Hanen R. Civ. P. 8.A. Here, FMS disregards the court's procedural rule by raising discovery issues in its motion for reconsideration instead of doing so in letters and at a court-ordered discovery conference.

In contrast, ST Shipping has attempted to resolve outstanding discovery disputes in accordance with the Court's procedure to avoid or minimize judicial intervention. ST Shipping drafted a proposed joint letter to the Court outlining the discovery disputes and asking the Court's assistance to resolve the issues, which it forwarded to FMS on August 19, 2022, but to which FMS never replied. ST Shipping remains willing to attempt to resolve these issues cooperatively in accordance with the Court's rules. However, these discovery issues have no relevance to this Motion; FMS's references to them on pages 3 through 5 of the Motion are improper and contrary to the stay order in place; and, ST Shipping thus respectfully moves to strike them.

## II. LAW AND ARGUMENT

### A. Severance of the Claims is Inappropriate

Plaintiff in essence seeks to sever SGR from the action to pursue its claims only against STS. FMS bears the burden of proof to show that severance is appropriate. *See Aspen Technology, Inc. v. Kunt*, No. 4:10–cv–1127, 2011 WL 86556 at *3 (S.D. Tex. Jan. 10, 2011) ("The party seeking severance under Rule 21 or separate trials under Rule 42(b) bears the burden of proving

8

that such action is necessary.").  Plaintiff has failed to satisfy its burden of proving that severance of the claims asserted by and against ST Shipping is necessary.

In determining whether severance is warranted, district courts in this Circuit consider the following five factors:

> "(1) whether the claims arose out of the same transaction or occurrence, (2) whether the claims present common questions of law or fact, (3) whether settlement or judicial economy would be promoted, (4) whether prejudice would be averted by severance, and (5) whether different witnesses and documentary proof are required."

*United States v. 0.2853 Acres of Land, More or Less, Located in Dallas County, Tx.*, 3:16-CV-2814-S-BN, 2019 WL 5000161, at \*3 (N.D. Tex. Sept. 16, 2019) (Horan, J.), adopted by 2019 WL 4996855 (N.D. Tex. Oct. 7, 2019) (quoting *In re Rolls Royce Corp.*, 775 F.3d 671, 675 n.6 (5th Cir. 2014) (internal quotations omitted)).  None of these factors supports a severance on this record.

### 1.   The claims against ST Shipping and SGR arise out of the same transactions and occurrences.

The claims against ST Shipping and SGR arise out of the same ocean carriage of cargo transactions and occurrences.  In determining whether the claims involve the "same transaction, occurrence, or series of transactions or occurrences," this Court applies a "some connection" or "logical relationship" analysis.  *MyMail, Ltd. v. Am. Online, Inc.*, 223 F.R.D. 455, 456 (E.D. Tex. 2004) (analyzing same transaction or occurrence under Fed. R. Civ. P. 20(a)).  Courts have found that an issue arises from the "same transaction" when there is a "likelihood of overlapping proof and duplication in testimony."  *Tex. Instruments Inc. v. Citigroup Global Mkts., Inc.*, 266 F.R.D. 143, 152 (N.D. Tex. 2010) (citing *In re Silica Prods. Litig.*, 398 F. Supp. 2d 563, 650 (S.D. Tex. 2005)).

Here, the record demonstrates that the claims have both "some connection" and a "logical relationship" since they arose out of the same transactions or occurrences.  SGR contracted with ST Shipping under the Voyage Charter for the carriage of crude oil from Texas to Colombia.  The three ocean bills of lading for the Cargo issued for FMS as the "Shipper" incorporated the terms and conditions of the Voyage Charter.  On October 15, 2020, FMS represented to ST Shipping that FMS was the owner of the subject cargo and that "FMS shall be the only party who may provide direction as to the removal of the Product from the Vessel."  (Dkt. No. 20, ST Shipping's Motion to Dismiss Amended Complaint at ¶12, Exhibit 6)  When SGR failed to pay the charter or demurrage fees, FMS tendered payment upon SGR's instruction for discharge of the Cargo carried the contract of carriage with FMS.  In sum, all the claims involve the same transaction and occurrence between SGR, FMS and ST Shipping, and thus weigh strongly against severance.

### 2. The claims present common questions of law or fact.

The second factor requires analysis of whether the claims sought to be severed involve "common questions of law and fact" to those at issue in the remaining claims.  Here, as set forth above, the same factual issues are relevant to all of FMS's claims against SGR and ST Shipping. FMS's claims against ST Shipping and SGR arise from SGR's failure to remit payment for demurrage and freight owed under the ocean bills of lading and the Voyage Charter.  Both SGR and FMS participated in deciding when to load and discharge their cargo and agreed on the ocean bill of lading terms governing the carriage of the Cargo.  They did so together for two prior voyages from Texas to Colombia under charters of the same vessel and a similar vessel from ST Shipping, SGR, in coordination with FMS's agreement, paid the freight and demurrage to ST Shipping, without complaint, for both of the prior voyages.

Further, while FMS alleges different causes of action against ST Shipping and SGR, common questions of law exist.  The standard in determining whether common questions of law or fact exist is "whether 'any question of law or fact' is common to all [P]laintiffs, not whether all questions are identical." *Perez v. Grupo TMM, S.A.B.*, No. 09–136,2009 WL 926991, at *4 (S.D. Tex. April 1, 2009) (quoting Fed. R. Civ. P. 20(a)).  For example, in *Perez*, the court found that the "common ties" between the plaintiff's claims supported joinder. *Id.*  Thus, as FMS's claims against SGR and ST Shipping involve common questions of law and fact, this factor weighs against severance.  The common questions of law here include whether SGR breached the contract of carriage, of which FMS was a party as Shipper, by failing to instruct discharge and pay the freight and demurrage, and whether FMS and SGR's non-payment of contractual freight and demurrage and lack of discharge instructions caused the delay in discharge at Colombia; not any breach of contract or other fault of ST Shipping.

### 3.     Severance would not promote settlement or judicial economy.

Severance would undermine settlement or judicial economy without SGR and San Miguel in the action.  FMS has acknowledged the need for discovery from SGR and San Miguel in the joint motion to the Court to request a second amended scheduling order [Dkt. No. 74].  In this order, FMS jointly stated that:

> [FMS and ST Shipping] need additional time to complete discovery, to obtain the Court's assistance if necessary in resolving discovery matters, including obtaining further discovery from SGR and TSM.
> . . .

As charterer of the subject Vessel and a party to the same series of contracts of carriage for the Cargo relied upon by FMS, as Shipper and alleged Cargo owner, SGR is inextricably linked to FMS's claims.  Duplication of discovery and related inefficiencies would result if discovery were to proceed against only FMS and ST Shipping, without SGR and San Miguel's evidence.

11

Severance would cause essentially the same claims and defenses to be tried twice, which will increase the burden on the Court and subject the parties to duplicative litigation.

If SGR's claims are severed, "the same witnesses will be required to testify at each of the trials. Separate trials [will] cause undue delay, additional expenses to the parties, and repetition of testimony." *Amie v. City of Jennings, La.*, No. 2:03-CV-20112005, WL 3007009, *2 (W.D. La. Nov. 8, 2005). Severance thus is inappropriate where, as here, it will "prolong the ultimate termination of an action, add to the cost of resolving the lawsuit, create duplicitous litigation or increase the likelihood of inconsistent verdicts." *El Aguila Food Products, Inc. v. Gruma Corp.*, 167 F.Supp. 2d 955, 960 (S.D.Tex. 2001), *see also, German by German v. Federal Home Loan Mortgage Corp.*, 896 F.Supp. 1385, 1400 (S.D.N.Y. 1995).

Concurrently litigating all of the claims will enable one court with a direct understanding of the claims to supervise discovery, decide pretrial motions, and schedule each track for final disposition. By not severing the action, the parties will be at less risk of receiving incomplete discovery from SGR which is relevant to ST Shipping's and FMS's claims. Thus, severance will not promote settlement or judicial economy.

### 4. Severance will cause prejudice to ST Shipping and SGR.

Severance would unduly prejudice ST Shipping's claims and defenses if the parties are not allowed to conduct proper discovery to obtain from SGR and San Miguel evidence relating to SGR's involvement in the transactions for ocean carriage and in FSM and SGR's delay in discharge and sale of the Cargo. San Miguel will be a key witness as a participant in the facts and events at issue. If severance is ordered, ST Shipping will be prejudiced if it cannot summon San Miguel as a witness to testify at trial or participate in discovery under the bankruptcy court's automatic stay order.

Further, ST Shipping would be subject to the increased expense associated with multiple trials and the likelihood of inconsistent verdicts. It may also be forced to bear costs or a judgment which would ultimately be for SGR's account if the actions are severed. Accordingly, severance would cause ST Shipping undue prejudice,

5.      <strong>All the claims require the same witnesses and documentary proof.</strong>

As set forth above, the same witnesses and documentary evidence are required for all claims and counterclaims: SGR, San Miguel, ST Shipping and FSM at a minimum. ST Shipping has served requests for production and interrogatories on SGR. These requests seek, *inter alia*, evidence relating to subject voyages, contracts between SGR and FMS for financing the contracts of ocean carriage, and communications between SGR and FMS. Further, FMS has served requests for production and interrogatories on SGR, seeking, *inter alia*, documents and communications between SGR and ST Shipping.

These claims are inseparably linked and will require many of the same witnesses and documentary evidence (*e.g.*, the Voyage Charter, SGR's accounting and business records, deposition testimony, communications between the parties, responses to discovery documents, etc.). Severing SGR would force the same witnesses to testify at each of the trials, causing undue delay, additional expenses to the parties, and repetition of testimony. Thus, all five factors weigh against severance.

<strong>B.      <u>This Court Properly Stayed the Action.</u></strong>

The Court properly exercised discretion in staying the action pending resolution of SGR and San Miguel's bankruptcy proceeding; and as severance is inappropriate, the Court should maintain the stay. Plaintiff does not dispute that district courts have the power to issue a discretionary stay of proceedings in the "interest of justice and in control of their dockets."

13

*Wedgeworth v. Fireboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983).  Such power "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). Indeed, "[a] district court's inherent power to stay proceedings is not mitigated or obviated by § 362(a)." *Gulfmark Offshore, Inc. v. Bender Shipbuilding & Repair Co.*, No. 09–249–WS–N, 2009 WL 2413664, at \*3 n.6 (S.D. Ala. Aug. 3, 2009) (citing *Kreisler v. Goldberg*, 478 F.3d 209 (4th Cir. 2007)).

For example, in *Federal Life Insurance Company (Mutual) v. First Financial Group of Texas, Inc.*, 3 B.R. 375, 376-77 (S.D. Tex. 1980), this Court held that, when the allegations raised against co-defendants are "inextricably interwoven" with claims against the debtor such that severance is inappropriate, a court may stay proceedings against the non-debtor co-defendants until the § 362 stay is lifted against the debtor.  As the court there reasoned, "the Court is persuaded that the automatic stay applies to judicial proceedings against a debtor in bankruptcy and its codefendants, when, as here, the allegations against them arise from the same factual and legal basis."  *Id.* at 377; *see also Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1147 & n.4 (5th Cir. 1987) (noting that the *First Financial* court properly stayed the entire case due to a "joinder of parties issue"); *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985) (acknowledging that the *First Financial* court properly instituted a stay "because the allegations raised against co-defendants who were principals of the debtor were 'inextricably interwoven' with claims against the debtor," making severance unsuitable).

Other district courts within the Fifth Circuit have likewise granted stays when, as here, "the allegations raised against co-defendants are 'inextricably interwoven' with claims against the debtor," such that severance of the claims would be inappropriate.  *See Abrams v. Integrated Pro*

*Servs., LLC*, No. 07-8426, 2015 WL 7458604, at *4 (E.D. La. Nov. 24, 2015); *Blundell v. Home Quality Care Home Health Care, Inc.*, No. 3:17-cv-1990-L-BN, 2017 WL 5889715, at *4–6 (N.D. Tex. Nov. 29, 2017).  As the court reasoned in *Gulfmark Offshore* in declining to lift a stay as to one party and allow the litigation to proceed:

> [Lifting the stay] would be extraordinarily inefficient, setting the stage for duplicative trials on closely related claims against closely related defendants. Much of the evidence relating to both sets of claims would be identical. Redundancies of effort on the part of litigants and the Court would be large and inevitable, and litigation costs for both sides would be increased substantially.

*Gulfmark Offshore*, 2009 WL 2413664 at *3.

In *Gigi's Cupcakes, LLC v. 4 Box LLC*, No. 3:17-CV-3009-B, 2019 WL 1767003 (N.D. Tex. Apr. 22, 2019), the Northern District of Texas likewise held that a discretionary stay should be extended to non-debtor defendants in an action.  There, the court held that, as the claims against the non-debtors were inextricably interwoven with the claims against the Debtors, severance was inappropriate, and thus, the claims should be stayed.  *Id.* at *4.  The court distinguished between the extension of the automatic stay under § 362 and a discretionary stay, reasoning that it was not convinced that the extension of an automatic stay was warranted, but that a discretionary stay was warranted "in the interest of justice and to appropriately control the Court's docket." *Id.* at *3.

Here, while Plaintiff may argue that the Court should lift the stay to avoid delay of FMS seeking a judgment, a "delay to obtain judgment 'is not a sufficiently compelling form of prejudice to outweigh the countervailing considerations.'" *Lanard Toys Ltd. v. Toys "R" Us-Delaware, Inc.*, No. 3:15-CV-849-J-34PDB, 2017 WL 5256870 (M.D. Fla. Nov. 13, 2017) (quoting *Gulfmark Offshore*, 2009 WL 2413664 at *3).  Indeed, on this record, ST Shipping respectfully submits that FMS has no right to any judgment against ST Shipping.  Here, the claims between FMS and ST

Shipping are inextricably interwoven with claims against SGR, and thus severance is inappropriate and the Court's stay order promotes the interest of justice.

As described above, the claims arise out of a single occurrence or series of occurrences, involve the same questions of law and fact, and will require identical discovery and evidence at trial. If the stay were lifted and the litigation proceeds without SGR and San Miguel, ST Shipping will be prevented from developing a complete record by obtaining full discovery of SGR and San Miguel. Such a limitation would prejudice ST Shipping in preparing for trial by excluding from discovery key evidence of SGR's communications and communications with FMS on the defective quality of the oil cargo prior to loading on the Vessel, the inability to order discharge of the Cargo by either of those parties due to the defective cargo, the options available to store the Cargo in Colombia or the reasons they chose to use ST Shipping's vessel as a storage facility while they tried to find a buyer for the defective cargo, and the bad faith dealing by FMS in alleging that the ship would not discharge the Cargo when the real reason was the failures by SGR and FMS. To date, SGR has only produced minimal discovery disclosures. SGR has documents and evidence that pertain to the contract made subject to the litigation. Depositions of San Miguel and SGR are necessary to establish facts confirming that Plaintiff and SGR delayed unloading the Vessel for their own reasons, and never once instructed the Vessel to discharge as FMS alleges. The discovery sought from SGR is relevant to the adjudication of ST Shipping's claims against SGR, and to its defense of the claims raised by FMS.

Further, ST Shipping has a valid counterclaim against SGR for indemnity of any damages it may incur in the litigation. The parties would need to reopen discovery as to SGR when the bankruptcy proceeding concludes; and ST Shipping would suffer irreparable prejudice if it were

forced to defend against the Plaintiff's claims without the aid of discovery from SGR and San Miguel and had to rely solely on discovery from FMS.

FMS's reliance on *Wedgeworth v. Fireboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983), is unavailing.  For example, unlike here, in *Wedgeworth* two of the 14 defendants filed for Chapter 11 bankruptcy, prompting several district courts handling the asbestos litigation to grant a stay as to all parties in nearly 200 claims.  In overturning the stay, the Fifth Circuit reasoned that many of the plaintiffs were dying from asbestosis, and a stay pending the resolution of the bankruptcy proceeding would cause substantial, and "in some instances, permanent" hardship.  *Id.* at 545.  FMS would face no such irreparable hardship here from the discretionary stay, but ST Shipping and SGR would be prejudiced by continuing the litigation without SGR's involvement.  Thus, unlike the asbestosis claims in *Wedgeworth*, here the "interests of justice" favor the discretionary stay.

The cases cited by Plaintiff at page 9 of the Motion likewise have no application here.  In a footnote, Plaintiff *cites ClipBandits, LLC v. Samora*, No. 4:20-CV-03054, 2020 WL 7388629, at *2 (S.D. Tex. Dec. 16, 2020), for the factors a court considers when ordering a discretionary stay.  However, *ClipBandits* analyzed a stay issued pending resolution of a trademark proceeding, not a bankruptcy case.  Here, by contrast, the action involves an automatic stay of an indispensable party at the "crux of this lawsuit" pending resolution of its bankruptcy proceedings.

Nor does the language Plaintiff cites in *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, No. CV H-14- 3428, 2017 WL 3620590, at *4 (S.D. Tex. Aug. 23, 2017), apply here.  Plaintiff excerpted a passage from *Cobalt* which did not address a stay in bankruptcy, but instead referred to a request for a stay pending appeal of an order denying class certification under Fed. R. Civ. P. 23(f) - - by

17

which stays are considered under a different and strict standard of review and are "discretionary and rare."

SGR is an indispensable party to the litigation; FMS does not explain how the litigation could proceed with efficiency without involvement of SGR and San Miguel. Any prejudice FMS may face from a slight delay in litigating its claims against ST Shipping, which lack merit as a matter of law and find no supporting evidence, does not outweigh the significant prejudice ST Shipping would face if forced to proceed in the litigation without the evidence obtained from SGR and San Miguel. Thus, due to the inextricably interwoven claims, severance is inappropriate; the better option remains that FSM seeks to lift the automatic stay in the bankruptcy court to allow all parties to proceed in this action; and the Court should maintain the stay in the interests of justice, and judicial economy, and to avoid undue prejudice and irreparable harm to ST Shipping, at least pending such an application by FSM and a grant or denial of the application by the bankruptcy court.

## III.    CONCLUSION

WHEREFORE, PREMISES CONSIDERED, ST Shipping prays that this Court should deny Plaintiff's Motions in all respects. As severance is inappropriate, ST Shipping prays that the stay instituted by the Court in its discretionary power be maintained as stated above, pending further consideration at such time as Plaintiff shows that an application to lift the automatic stay as to SGR and San Miguel has been filed in the bankruptcy court and that court has granted or denied the application.

Respectfully submitted,

*SHARPE & OLIVER, L.L.P.*

By_____

 Robert C. Oliver

 State Bar No. 15255700

 *S. D. Texas No. 886*

 *5535 Memorial Drive, No. F570*

 Houston, Texas 77007

 Telephone: (713) 864–2221

 Facsimile:  (713) 864–2228

 Email:   macknife@macknife.net

OF COUNSEL:

*Pro Hac Vice*
John R. Keough, III
S. D. N. Y. No.  JK6013
Clyde & Co. US  LLP
405 Lexington Avenue
New York, New York 10174–0002
Telephone:     (212) 710–3900
Facsimile:     (212) 710–3950
Email:   John.Keough@clydeco.us

 ATTORNEYS   FOR   DEFENDANT
 AND   CROSS   CLAIMANT,   ST
 SHIPPING & TRANSPORT PTE LTD

*Certificate of Service*

I served this this Opposition and the accompanying, proposed Order upon the parties by their respective counsel of record by CM/ECF on October 27, 2022.

_____

Robert C. Oliver